TOUHEY et al., Appellants,

v.

ED'S TREE & TURF, L.L.C., et al., Appellees.

[Cite as *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432.]

Court of Appeals of Ohio,
Twelfth District, Madison County.

No. CA2010–11–026.

Decided July 11, 2011.

Charles V. Longo Co., L.P.A., Charles V. Longo and Matthew D. Greenwell, for appellants.

Carborn & Butauski Co., L.P.A., and Joseph A. Butauski, for appellees.

RINGLAND, Judge.

{¶ 1} Plaintiffs-appellants, Jennifer and Thomas Touhey, appeal from the Madison County Court of Common Pleas decision granting summary judgment to defendant-appellee Ed's Tree & Turf, L.L.C., as well as its decision granting partial summary judgment to defendant-appellee Rudy Funk. For the reasons outlined below, we reverse and remand for further proceedings.

{¶ 2} On April 24, 2007, Jennifer Touhey was injured in an automobile accident when she collided with a truck and trailer owned by Ed's Tree & Turf, a landscaping company owned and operated by Mark E. Ross. At the time of the accident, Funk was driving the vehicle, accompanied by Frank Crabtree, an employee of Ed's Tree & Turf.

{¶ 3} On March 11, 2009, appellants filed an action against Ed's Tree & Turf as well as its alleged employee, Funk, claiming, among other things, negligence, vicarious liability, and negligent hiring and supervision. Appellants also sought to recover punitive damages. After filing their answers, Ed's Tree & Turf filed a motion for summary judgment on all claims, and Funk filed a motion for partial summary judgment solely on the issue of punitive damages. The trial court granted both parties' motions.

{¶ 4} Appellants now appeal from the trial court's decision granting Ed's Tree & Turf's motion for summary judgment as well as Funk's motion for partial summary judgment, raising two assignments of error for review.

## Assignment of Error No. 1

{¶ 5} "The trial court erred in granting appellee Ed's Tree & Turf's motion for summary judgment."

{¶ 6} In their first assignment of error, appellants argue that the trial court erred by granting summary judgment to Ed's Tree & Turf.

{¶ 7} On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can come only to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. See Civ.R. 56(C); see also *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The movant bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once this burden is met, the nonmovant has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, Butler App. No. CA2001–10–249, 2002-Ohio-3730, 2002 WL 1625682, ¶ 10.

{¶ 8} Appellants initially argue that the trial court erred in its decision granting summary judgment to Ed's Tree & Turf by finding that Funk was not an Ed's Tree & Turf employee, "as there was conflicting and disputed evidence upon which reasonable minds could come to different conclusions as to the employment status of Funk at Ed's Tree." We agree.

{¶ 9} "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph one of the syllabus; *Billman v. Massillon Dev. Group, L.L.C.*, Stark App. No. 2007–CA–00169, 2008-Ohio-287, 2008 WL 223668, ¶ 10. However, "where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be determined by the court." *Parrett v. Trost* (Feb. 7, 2000), Clermont App. No. CA99–06–058, 2000 WL 155515, at 5; *Brown v. CDS Transport Inc.*, Franklin App. No. 10AP–46, 2010-Ohio-4606, 2010 WL 3783137, ¶ 10.

{¶ 10} Whether one is an employee or an independent contractor depends on the facts of each case. *Mendoza v. Bishop*, Butler App. No. CA2004–04–080, 2005-Ohio-238, 2005 WL 123982, ¶ 34; *Gillum v. Indus. Comm.* (1943), 141 Ohio St. 373, 25 O.O. 531, 48 N.E.2d 234, paragraph two of the syllabus. The

key factual determination in making such a finding "is who had the right to control the manner or means of doing the work." *Bookwalter v. Prescott,* 168 Ohio App.3d 262, 2006-Ohio-585, 859 N.E.2d 978, ¶ 17. As noted by the Ohio Supreme Court, in making such a determination, "[t]he factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Bostic* at 146, 524 N.E.2d 881; *Baker v. Curtis C. Howard Equip.* (Dec. 14, 1998), Madison App. No. CA98–04–019, 1998 WL 857578, at *4; *Nye v. Kemp* (1994), 97 Ohio App.3d 130, 133, 646 N.E.2d 262. "All indicia of an employment relationship in a given case must be assessed together as a whole." *Vajda v. St. Paul Mercury Ins. Co.,* Cuyahoga App. No. 80917, 2003-Ohio-160, 2003 WL 125086, ¶ 15, citing *Harmon v. Schnurmacher* (1992), 84 Ohio App.3d 207, 211, 616 N.E.2d 591.

{¶ 11} According to Funk's deposition testimony, Funk, who claimed he was paid "underneath the table," worked for Ed's Tree & Turf maintaining its "machines and stuff" for "[a]bout a month, month and a half" before he was fired immediately after the accident in question. In addition, Funk, who testified that he worked "close to" 40 hours a week, but less if Ross "didn't need" him, claimed that he would report to the shop "between 8 and 8:30" Monday through Friday, and "sometimes Saturday," in order to "start [its] equipment up" and "get everything warmed up so it would be ready to go." Funk would then "clean the shop up" and "change the oil and stuff for them," or, if something were to break down, "check the batteries out, make sure the battery is up enough where it runs the equipment." Funk also testified that "[i]f something breaks down [at a job site]," he would "take stuff out there to try to fix equipment when it's out in the area." When asked who told him what to do after he reported to the shop, and who he considered to be his boss, Funk testified that Ross was the boss who instructed him on what to do.

{¶ 12} According to Ross, Funk was not an employee of Ed's Tree & Turf but would often "just hang around the shop, talk to his friend Frank Crabtree, or fish." Ross did testify, however, that after meeting Funk, he agreed that Funk could come to the shop and "change some oil, things like that," but that he "wasn't a mechanic, labeled. He just did some oddball things." In addition, when asked during his deposition, "[o]ther than you, was there any other employee that would have been responsible for supervising [Funk]," Ross testified affirmatively, and named his foreman, Tim Taylor, as well as his brother and employee, Bryan Ross. Ross, who also admitted to paying Funk "when he completed a task we allowed him to perform" and permitting him to use Ed's

Tree & Turf's tools, further testified that Funk never filled out a job application, did not complete any withholding-tax documents, and did not receive any employee benefits.

{¶ 13} After a thorough review of the record, and upon construing the evidence in a light most favorable to appellant, something that this court must do when reviewing the trial court's decision to grant summary judgment, we find that a genuine issue of material fact remains as to Funk's status as an employee or independent contractor of Ed's Tree & Turf. As noted above, evidence was presented indicating that Funk went to Ed's Tree & Turf's shop on a daily basis in order to get the necessary equipment "warmed up." Evidence was also presented indicating that Funk worked "close to" 40 hours a week cleaning up the shop and maintaining Ed's Tree & Turf's equipment, but that Ross, his alleged boss, actually controlled the amount of hours Funk worked. In addition, evidence was presented indicating that Ross, as well as his foreman, Tim Taylor, and brother and employee, Bryan Ross, were responsible for supervising Funk. There was also evidence indicating that Funk was paid for his services, albeit "underneath the table," and that he was permitted to use Ed's Tree & Turf's tools. Based on this evidence, we find that reasonable minds could reach different conclusions as to Funk's status as an employee or an independent contractor.

{¶ 14} Having found that a genuine issue of material fact remains as to Funk's status as an employee or an independent contractor, we find that the trial court erred by granting summary judgment to Ed's Tree & Turf. Therefore, because a genuine issue of material fact remains, we find it unnecessary to address the remaining issues presented by appellants under their first assignment of error. Accordingly, appellants' first assignment of error is sustained and the trial court's decision granting summary judgment to Ed's Tree & Turf is reversed. The cause is remanded for further proceedings.

### Assignment of Error No. 2

{¶ 15} "The trial court erred in granting appellee Rudy Funk's motion for partial summary judgment."

{¶ 16} In their second assignment of error, appellants argue that the trial court erred by granting Funk's partial motion for summary judgment regarding their claim for punitive damages. In support of their claim, appellants argue that the trial court erred by finding that Funk's actions in deciding to drive that day "did not establish a conscious disregard for the rights and safety of others." We agree.

{¶ 17} In tort law, punitive damages are available in actions involving fraud, actual malice, oppression, or insult on the part of the defendant. *Creech v. Brock & Assoc. Constr.*, 183 Ohio App.3d 711, 2009-Ohio-3930, 918 N.E.2d 541, ¶ 20, citing *Preston v. All Vinyl Fence & Decks, Inc.*, Trumbull App. No. 2008–T–0015, 2008-Ohio-6997, 2008 WL 5428817, ¶ 37; R.C. 2315.21. Actual malice, as required for an award of punitive damages in this case, means, among other things, "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174. When actual malice is predicated on conscious disregard, such as is the case here, the court "must review the evidence to determine if reasonable minds can differ as to whether the party was aware his or her act had a great probability of causing substantial harm" and whether sufficient evidence was presented "that the party consciously disregarded the injured party's rights or safety." Id.; *Malone v. Courtyard by Marriott L.P.* (1996), 74 Ohio St.3d 440, 446, 659 N.E.2d 1242.

{¶ 18} In this case, Funk, who claimed to have had some experience working on the trailer that was attached to the truck involved in the accident, testified that before driving the truck, which Ross identified as a Ford F600 that had a "gross vehicle weight of 26,000 pounds," he noticed that the "wires" for the trailer's brakes "got cut somehow through the job site." When asked whether he informed Crabtree that the "wires on the trailer were cut," Funk testified that Crabtree told him "they would be alright." Funk then testified that while driving the truck, a vehicle for which he testified he was unqualified and was uncomfortable driving, he came across a stopped vehicle that required him to hit the brakes abruptly, thus prompting the trailer, which had a gross vehicle weight of 7,000 pounds, to slide across the centerline and strike appellants' vehicle.

{¶ 19} After a de novo review of the record, and again upon construing the evidence in a light most favorable to appellants, we find that a genuine issue of material fact remains whether Funk acted with conscious disregard for the safety of others by driving the truck, a vehicle weighing 26,000 pounds, for which he claimed he was unqualified and was uncomfortable driving, along with its attached trailer, a trailer he claimed to have worked on previously, that had its brake "wires * * * cut somehow through the job site." In turn, even though Funk claimed Crabtree told him "they would be alright," and even assuming, as the dissent asserts, that Funk believed it imprudent to allow Crabtree to drive in his condition, reasonable minds can still differ whether Funk was aware that driving a truck with a trailer that had its brakes cut exhibited a conscious disregard for the rights and safety of others that created a great probability of causing substantial harm. Just as it is day-to-day knowledge that would have the dissent "conclude centrifugal force caused the forward movement of the trailer to

swing out from behind the truck," it is also day-to-day knowledge that driving a vehicle with an attached trailer that arguably did not have any brakes, at a minimum, creates a question of fact whether Funk acted in conscious disregard for the rights and safety of others.

{¶ 20} The dissent, although not explicit, essentially claims that appellants have waived any issues regarding the trailer's braking system since they did not rely upon these facts in their memorandum in opposition to Funk's motion for summary judgment. However, those facts, which Ross, Crabtree, and Funk all testified to as part of their October 9, 2009 depositions, were clearly part of the record before the trial court.

{¶ 21} On appeal from a trial court's decision granting summary judgment, this court is required to review both the law and the facts de novo. In other words, "[w]hen reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. In turn, although these facts were not specifically relied upon by appellants in their memorandum in opposition to Funk's motion for summary judgment, such facts are still part of the record precluding this court from affirming the trial court's decision.

{¶ 22} In light of the foregoing, because a genuine issue of material fact remains whether Funk acted with a conscious disregard for the rights and safety of others, we find that the trial court erred by granting partial summary judgment to Funk on appellants' punitive-damages claim. It is the trier of fact, not this court, that will ultimately decide whether appellants' claim for punitive damages is meritorious. Accordingly, appellants' second assignment of error is sustained, the trial court's decision granting partial summary judgment to Funk is reversed, and the cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

HENDRICKSON, P.J., concurs.

PIPER, J., concurs in part and dissents in part.

PIPER, Judge, concurring in part and dissenting in part.

{¶ 23} I concur in the majority's decision to reverse the decision of the trial court as it pertains to Ed's Tree & Turf because there is a genuine issue of material fact regarding Funk's status as either an employee or an independent contractor. However, I respectfully dissent from that portion of the opinion reversing the trial court's granting of summary judgment as to punitive damages

pertaining to Funk. When examining the evidence in the light most favorable to Touhey, reasonable minds can come to only one conclusion as it relates to punitive damages, which requires us to affirm the trial court's decision.

{¶ 24} The majority opinion correctly points out that punitive damages are recoverable in actions involving actual malice. The majority cites *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, paragraph one of the syllabus, for the proposition that actual malice means "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Since *Preston,* the Ohio Supreme Court has elaborated on the degree of proof necessary to demonstrate conscious disregard for the rights and safety of others.

{¶ 25} In *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, quoting *Preston* at 335, the court reiterated its holding in *Preston* and explained that "punitive damages are intended to punish and deter conduct resulting from a mental state so callous in its disregard for the rights and safety of others that society deems it intolerable. This mental state is the component of the standard contained in the phrase 'conscious disregard for the rights and safety of other persons.'" The *Calmes* court articulated that "misconduct greater than mere negligence is required. This component is expressed in the language 'great probability of causing substantial harm.'" Id., quoting *Preston* at 335–336.

{¶ 26} The supreme court later stated that "actual malice requires consciousness of the near certainty (or otherwise stated 'great probability') that substantial harm will be caused by the tortious behavior. Any less callous mental state is insufficient to incur that level of societal outrage necessary to justify an award of punitive damages. Therefore, it is evident that a reckless actor, who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously." *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 698, 590 N.E.2d 1228, overruled on other grounds (1994), 71 Ohio St.3d 552, 644 N.E.2d 397.

{¶ 27} In support of punitive damages, the majority opinion focuses upon Funk's feeling uncomfortable and unqualified to drive the truck, the weight of the vehicles involved, and the possibility that the trailer brake lines were not operating. Apparently, neither the trial court nor the parties treated the brake lines as a genuine issue or a material fact because Touhey did not raise the brake issue in her memorandum in opposition to Funk's motion for summary judgment, and the trial court did not address the brakes in its decision and entry. A de novo review should apply the evidence to the issues presented to the trial court. See *Wall v. Sprague,* Clermont App. No. CA2007–05–065, 2008-Ohio-3384, 2008 WL 2635528, ¶ 20 (noting that "appellate courts do not consider arguments raised

by parties for the first time on appeal. * * * 'Despite the fact that appellate courts review summary judgment decisions de novo, the parties are not given a second chance to raise arguments that they should have raised below' "). These items, in the totality of all the other circumstances, clearly do not rise to the level of a conscious disregard of the near certainty or great probability of substantial harm as discussed in *Calmes*.

{¶ 28} According to Funk's deposition testimony, Funk did not desire to drive the truck that day but, to the contrary, was reluctant, only to be pressured into driving by Crabtree because his back hurt. Funk's testimony indicated that he was friends with Crabtree (the man who helped him secure employment) and would help him when Crabtree "needed help." Funk clearly testified that on the day of the accident, Crabtree asked him to drive because he was suffering from back pain. When Funk expressed his hesitancy to drive, Crabtree "basically forced" him to drive. Opposite the majority's suggestion of a material fact regarding the probability of contemplated harm, it would appear Funk believed it imprudent to allow one concerned or distracted with pain to drive.

{¶ 29} Funk's acquiescence to Crabtree's persistence may arguably establish Funk's negligence, but that, along with the other factors referenced by the majority, does not establish a callous act in disregard for the rights and safety of others. It would be a departure from previously pronounced definitions as applied to factual circumstances to say that the legal standards involved here would embrace punitive damages.

{¶ 30} Regarding the brake lines, the majority relies upon the idea that the accident was caused by an issue with the trailer's brakes. The record, however, does not establish the reason for the accident. Neither party submits any evidence that nonfunctioning trailer brakes were the cause of the collision. There was no evidence or argument before the trial court that the unloaded trailer was required by law or practicality to have an independent braking system. Furthermore, the majority discusses cut wires as though they were severed, when that was not established before the trial court.

{¶ 31} Funk testified that he had been driving without any trouble for approximately 20 minutes when he came around a corner, saw stopped traffic, and abruptly "put on the brakes." At that point, the trailer "pushed the truck, and the trailer went left of center and [Touhey] sideswiped the trailer."

{¶ 32} A review of Funk's other testimony demonstrates that he is testifying to possibilities and probabilities through leading questions that are permeated with uncertainty and conjecture. In testifying to the details of the accident, the following exchange occurred.

{¶ 33} "[Q] Do you know what—is that trailer equipped with electric brake [sic], probably?

{¶ 34} "[A] Probably, yeah, but the truck wasn't hooked up for electric brakes for it.

{¶ 35} "[Q] Pardon me?

{¶ 36} "[A] We had it hooked up, but that truck, I don't think it was for electric brakes.

{¶ 37} "[Q] So when you hooked up that trailer to the truck, the only—you put, obviously, the receptacle, there was plug for the lights, right? Yes?

{¶ 38} "[A] Right.

{¶ 39} "[Q] And you don't believe that that trailer was equipped with electric brakes?

{¶ 40} "[A] No, not unless—the wires got cut somehow, either through the job site or something like that, you know."

{¶ 41} When asked what his response was to the possibility of cut wires, Funk responded that he mentioned it to Crabtree, and the more qualified and experienced Crabtree stated that they would be all right. Although Funk testified that the lines were possibly cut, he did not testify to what degree they were cut. Because the record does not indicate to what degree the lines were cut, or if they were cut, that can have little significance in forming a conscious disregard with a great probability or near certainty of harm.

{¶ 42} Were I to assume that the brake line to the trailer was in fact somehow severely cut, Funk's testimony establishes that he expressed his safety concerns, and that he was told by Crabtree that the lines would be all right. Funk testified that before the accident occurred, he knew that Crabtree had experience driving trucks and hauling heavy equipment, and that he understood that Crabtree held a commercial drivers' license "CDL" license.[1] I am reluctant to join the majority in holding that when a person inquires about a safety issue and receives assurances from one believed to be more qualified and experienced, such action indicates consciousness of the near certainty (or otherwise stated "great probability") that substantial harm will be caused by the tortious behavior of operating the equipment in question. The failure to perceive the danger of a situation is vastly different than a conscious, more deliberate, disregard of substantial harm. Focusing on facts that are relative to causation is not material to the "consciousness" of any disregard for the great probability of substantial harm.

---

1. According to Crabtree's deposition, he held a chauffeur's license, which he considered a commercial license. He also testified that he never applied for an additional CDL license because the department of motor vehicles told him he did not need a CDL to haul agricultural products such as the sod that Ed's Tree & Turf installed for its customers. Regardless of whether Crabtree actually held a CDL, Funk's testimony is clear in that he believed Crabtree was experienced in driving large vehicles and held a CDL.

{¶ 43} Even if I were to accept the majority's analysis that Funk should not have driven a truck of that size without the proper licensure,[2] and that the trailer's brakes were not operating, I would characterize Funk's actions as far below the malicious standard required for punitive damages. At best, it appears that Funk considered that his actions could result in a mishap, evidenced by his reluctance to drive. It is clear that Funk did not consider the possibility of harm so probable that it prevented him from eventually agreeing to relieve Crabtree in driving. However, a person "who only has knowledge of the mere possibility that his or her actions may result in substantial harm, is not behaving maliciously." *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 698, 590 N.E.2d 1228.

{¶ 44} Nowhere in Funk's testimony did he state that he was aware of the weight of the truck or trailer, and I would note that Funk's testimony merely establishes possibilities that either the trailer did not have independent brakes (because the truck itself was not designed to accommodate them), or that the brake lines or wires were cut to some unknown degree. Even reviewing these facts in a light most favorable to Touhey, I do not find either fact dispositive of Funk's alleged conscious disregard for the safety of others. While several factors might be combined to establish Funk's negligence, there is no conduct constituting misconduct greater than mere negligence.

{¶ 45} Funk testified that once he came around the corner, he saw traffic stopped in front of him. Funk stated that at the time he applied the brakes, he was only ten feet away from the stopped cars and therefore had to "put the brakes on pretty abruptly." Given the force of the stop and Funk's position coming around the corner, it is day-to-day knowledge that would have us conclude that centrifugal force caused the forward movement of the trailer to swing out from behind the truck once Funk suddenly applied the brakes. There is no evidence in the record other than speculation as to what mechanically, if anything, caused the collision, and we must be cautious in extrapolating facts from vague, undeveloped testimony, particularly when considering damages designed to punish egregiously intolerable conduct.[3]

---

**2.** According to Ross's deposition, he believed that department of motor vehicles standards did not require his drivers to hold a CDL license because their trucks were used to haul agricultural products. He later testified that he believed that any employee he hired would be exempt from having a CDL, "as long as he had a valid driver's license." Ross also testified that on several occasions when his employees were cited for not having a CDL license, he provided documentation to the court that his employees were exempt due to the agricultural nature of their business and as a result, the citations were nullified.

**3.** Funk's vague, speculative, and inconsistent testimony appears to be nothing more than someone attempting to deflect responsibility with after-the-fact explanations not founded in established facts. This does little to unveil a "conscious disregard" prior to the collision.

{¶ 46} I would affirm the trial court's decision, and I agree with its conclusion that "it is clear from the undisputed facts that Plaintiffs cannot prove by clear and convincing evidence that Defendant Rudy Funk possessed consciousness of the near certainty that substantial harm would be caused by his behavior." While Funk's actions may have constituted negligence, Ohio law is clear that misconduct greater than mere negligence is required in order to recover punitive damages. The issue of punitive damages as to Ed's Tree & Turf remains to be decided.

{¶ 47} In forcing this issue to be decided by a jury when no genuine issue of material fact was previously presented to the trial court, the purpose of Civ.R. 56 is rendered meaningless. I would affirm the decision of the trial court granting partial summary judgment to Funk regarding the punitive-damages issue. I therefore am compelled to concur in part and dissent in part.