[Cite as *Deerfield Twp. v. Mason*, 2013-Ohio-779.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| DEERFIELD TOWNSHIP, WARREN COUNTY, OHIO, | : | |
| | : | CASE NO.  CA2011-12-138 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 3/4/2013 |
| - vs - | : | |
| | : | |
| CITY OF MASON, OHIO, | : | |
| Defendant-Appellant. | : | |
| | : | |


CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 10CV77576


Frost Brown Todd LLC, Thomas A. Swope, Benjamin J. Yoder, 9277 Centre Pointe Drive, Suite 300, West Chester, Ohio 45069, for plaintiff-appellee

Wood & Lamping LLP, Dale A. Stalf, Jeffrey D. Forbes, Kenneth J. Schneider, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, for defendant-appellant


**RINGLAND, J.**

{¶ 1} Defendant-appellant, the city of Mason ("Mason"), appeals from a decision in the Warren County Court of Common Pleas awarding summary judgment to plaintiff-appellee, Deerfield Township ("Deerfield"), regarding taxes owed to Deerfield as a result of an annexation reparation agreement between the parties. For the reasons outlined below,

we affirm.

{¶ 2} This case revolves around a 262.36-acre tract of real property ("the Territory") that was situated in Deerfield. In order to attract a Proctor and Gamble Company ("P&G") research facility to the area, the Warren County Commissioners ("commissioners") passed several tax abatements. Following the enactment of the tax abatements, P&G constructed a research facility in Warren County on the Territory.

{¶ 3} Before the P&G research facility opened, a petition was filed requesting Mason annex the Territory. Mason supported the annexation. However, Deerfield initially opposed the annexation largely due to tax revenue it would lose. At the request of the commissioners, Mason and Deerfield entered negotiations. Eventually, Mason and Deerfield reached an agreement regarding the annexation, which was executed on October 24, 1995.

{¶ 4} The following are the relevant general portions of the agreement:

[3] WHEREAS, Mason and Deerfield desire to enter into an agreement to provide for annual payments to compensate Deerfield for lost tax revenues pursuant to Ohio Revised Code Section 709.191;

* * *

[6] WHEREAS, it is the intent of the parties that Deerfield shall not suffer any loss of tax revenue by reason of the annexation of the territory described herein.

{¶ 5} In addition, there are several relevant specific portions of the agreement, which state:

NOW THEREFORE, for and in consideration of the mutual promises, covenants and benefits contained herein, the parties do hereby agree as follows:

* * *

2.      AMOUNT AND NUMBER OF PAYMENTS

a)      During the term of this agreement, Mason shall make an annual payment to Deerfield to compensate for lost tax revenues due to the annexation of the Territory.

b)      Until such time as the tax abatement upon the property expires, the annual payment shall be equal to that amount of real, public utility and tangible personal property taxes which Deerfield would collect from the Territory, based upon the tax rate in effect within Deerfield at the time, but for the annexation of the Territory.  There shall be no payment made to offset the tax abatement.

c)      Upon the expiration of the tax abatement and/or Tax Increment Financing (T.I.F.) upon the Territory, the annual payment referred to as Item 2 a) above shall equal the lesser of the amount of real, public utility and tangible personal property taxes which: (i) Mason actually collects form the Territory; or (ii) Deerfield would realize from the Territory based upon the tax rate in effect within Deerfield at the time, but for the annexation of the Territory.

{¶ 6}   In the agreement, section two, paragraph d had several modifications.  To illustrate the modifications, section two, paragraph d as it appeared in the agreement is set forth below:

> d)   It is specifically agreed by the parties that the amount of the annual payment set forth in Items 2 b) and c) above shall include any increases *or decreases* in the taxes realized by Mason upon the Territory or that would have been realized by Deerfield upon the Territory, but for the annexation of the Territory, *due to change in tax rates or* revaluation upon the territory. This Item 2 d) is subject to the terms of Item 2 c).

{¶ 7}   With the modifications, the final version of section two, paragraph d, states:

d)      It is specifically agreed by the parties that the amount of the annual payment set forth in Items 2 b) and c) above shall include any increases or decreases in the taxes realized by Mason upon the Territory or that would have been realized by Deerfield upon the Territory, but for the annexation of the Territory, due to change in tax rates or revaluation upon the territory. This item 2 d) is subject to the terms of Item 2 c).

{¶ 8}   Subsequent to the agreement and annexation, Deerfield passed fire and parks levies that became effective in 1999.  Also succeeding the annexation, Ohio passed

Am.Sub.H.B. 66 in 2005 that gradually phased out the tangible personal property tax. This bill established the Ohio Commercial Activity Tax ("commercial activity tax"), and also established a local government tangible property tax replacement fund ("replacement fund"). A dispute arose as to whether Mason was responsible to reimburse Deerfield under the agreement for the taxes that Deerfield would have generated on the Territory due to the fire and parks levies and changes in state law with the commercial activity tax. Subsequently, Deerfield filed a complaint alleging breach of contract.

{¶ 9} On June 14, 2011, Deerfield moved for summary judgment, and Mason filed its own motion for summary judgment in response. The trial court granted Deerfield's motion for summary judgment on all relevant parts and denied Mason's motion for summary judgment. The trial court found that Mason was required to pay Deerfield for the taxes generated by the fire and parks levies and the changes in state law under the commercial activity tax. The trial court awarded Deerfield $776,703.53 in money damages for the fire and parks levies. The trial court further awarded Deerfield $343,301.00 in money damages for reimbursement under the commercial activity tax. Additionally, the trial court awarded prejudgment interest with an accrual date of January 1 of each year for annual payment.

{¶ 10} Mason timely appeals, and asserts two assignments of error for review.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED IN DENYING [MASON'S] MOTION FOR SUMMARY JUDGMENT AND GRANTING [DEERFIELD'S] MOTION FOR SUMMARY JUDGMENT.

{¶ 13} Mason argues the trial court erred in granting summary judgment in favor of Deerfield regarding the taxes produced by the levies and monies produced by the commercial activity tax. Specifically, Mason argues that the manifest intent of the parties was not to include new tax levies as evidenced by a provision that initially stated "due to new

levies" that was struck and replaced with "change in tax rates." Additionally, Mason argues that the manifest intent of the parties did not include payments due to subsequent changes in state law. Mason argues that although the agreement provides that payments should include all taxes that would have been received "but for" the annexation, the parties had not contemplated payments under the commercial activity tax. We disagree.

{¶ 14} Initially, we note that an appellate court reviews a trial court's ruling on a motion for summary judgment independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that of the trial court. *Howard v. Kirkpatrick*, 12th Dist. No. CA2008-11-040, 2009-Ohio-3686, ¶ 9; *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992). Summary judgment is proper when (1) there are no genuine issues of material fact remaining for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come only to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. *See* Civ.R. 56(C); *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.).

{¶ 15} To set forth a claim for breach of contract, a plaintiff must prove the following elements: (1) the existence of a contract, (2) the plaintiff fulfilled its contractual obligations, (3) the defendant failed to fulfill its contractual obligations, and (4) the plaintiff incurred damages as a result. *S&G Invests., L.L.C. v. United Cos., L.L.C.*, 12th Dist. No. CA2010-03-017, 2010-Ohio-3691, ¶ 12. Both parties agree that contract interpretation is central to determining whether Mason failed to perform. There is no dispute as to the existence of the contract or that Deerfield failed to perform in any way. Additionally, there is no disagreement as to the amount owed to Deerfield if the contract covers the fire and parks levies and the changes to state law affecting taxes on tangible personal property. Both parties agree that

with the additional taxes, the amount owed to Deerfield for the fire and parks levies would be $776,703.53 and the amount owed to Deerfield because of changes to state law affecting taxes on tangible personal property would be $343,301.00.

{¶ 16} With the issue of contract interpretation, the intent of the parties is paramount. *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37. A court is to examine the contract as a whole and presume that the intent of the parties is reflected within the contract language itself. *Id.* A court's construction of a contract should attempt to harmonize all the provisions of the document rather than to produce conflict in them and give effect to all of its provisions. *Pierce Point Cinema 10, L.L.C. v. Perin-Tyler Family Found., L.L.C.*, 12th Dist. No. CA2012-02-014, 2012-Ohio-5008, ¶ 11, citing *Farmers Natl. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 337 (1911). Additionally, a court looks to the plain and ordinary meaning of language within a contract "unless another meaning is clearly apparent from the contents of the agreement." *Sunoco* at ¶ 37. Common, undefined words appearing in a contract "will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents" of the agreement. *Id.* at ¶ 38, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992). Consequently, extrinsic evidence cannot be used when contract interpretation turns on plain language. *Sunoco* at ¶ 47, 58.

{¶ 17} We begin by looking at the plain meaning of the term "tax rate" and its effect regarding the fire and parks levies. Both Black's Law Dictionary and Webster's Dictionary provide similar definitions. Black's Law Dictionary defines "tax rate" as "[a] mathematical figure for calculating a tax, usually expressed as a percentage." *Black's Law Dictionary* 1502

- 6 -

(8th Ed.2004). Webster's Dictionary defines the terms separately, but the meaning is similar. Webster's Dictionary defines "tax" as "a usu[al] pecuniary charge imposed by legislative or other public authority upon persons or property for public purposes." *Webster's Third New International Dictionary* 2345 (1981). Furthermore, the term "rate" is defined both as "a charge, payment, or price fixed according to a ratio, scale, or standard" and "a fixed or established portion or measure." *Webster's Third New International Dictionary* 1884 (1981). Both authorities indicate that a tax rate is a way of calculating an amount or tax that can be a fixed amount or expressed as a ratio or percentage. While utilizing the definition of "rate" as a fixed amount is a lesser used definition, we nevertheless find that this definition embodies the intent of the parties in this case.

{¶ 18} The trial court referred to "overriding principles" in its decision. Mason contends that the agreement does not contain any overriding principles. Nevertheless, there are several general provisions in the agreement, whether or not construed as "overriding principles," that shed light on the parties' intent. Mason notes that specific provisions trump general provisions in interpreting contracts. While this may be true, interpreting section two, paragraph d through the lens of more general provisions is not rendering this specific provision ineffective. Rather, by viewing the provisions in this way, they are harmonized with one another.

{¶ 19} Regarding general provisions, paragraph three of the preamble states that the parties "desire to enter into an agreement to provide for annual payments to compensate Deerfield for lost tax revenues * * *." Paragraph six explicitly states that "it is the intent of the parties that Deerfield shall not suffer any loss of tax revenue by reason of the annexation of the [T]erritory described herein." The parties' intent is further evidenced by language in several specific sections, section two, paragraphs b, c, and d, that the amount paid to Deerfield includes real, public utility, and tangible personal property taxes that would have

been realized by Deerfield, "*but for* the annexation of the Territory[.]" (Emphasis added.) Consequently, but for the annexation of the territory or, stated another way, if the territory had not been annexed, Deerfield would currently be receiving taxes from the fire and parks levies. By utilizing this language, it appears that the intent of the parties is that Deerfield should recover real, public utility, and tangible personal property taxes as if the Territory was still a part of Deerfield.[1] Harmonizing the general provisions with specific provisions and the fact that a change in tax rates can be a change in an overall amount, we find that the language utilized in section two, paragraph d necessarily includes new levies that impact real, public utility, and tangible personal property taxes that Deerfield would have received but for the annexation.

{¶ 20} Mason also contends that because the parties deleted the language "due to new tax levies," the parties expressed a clear and unmistakable intent not to include new levies in the taxes Mason owed Deerfield under the agreement. Mason cites 11 Williston, *Contracts*, Section 32.13 (4th Ed.2012) for this proposition. However, this section of Williston also states that added or modified provisions control over printed provisions in a contract. *Id.* Consequently, the added provision of "change in tax rates" is the controlling provision. Such a change makes section two, paragraph d internally consistent with other paragraphs within the section that refer to "tax rate." Furthermore, the plain meaning of the term "tax rate" can include new levies, which was the intent of the parties in this case when looking within the four corners of the agreement as demonstrated in the analysis above.

{¶ 21} In regard to the commercial activity tax, Mason argues that "[w]hen a written agreement expressly provides that the payments to be made thereunder should include all

---

1. We recognize that this statement is limited by the specific provision of section two, paragraph b, specifying that there is to be "no payment to offset the tax abatement." Furthermore, this statement is limited by the specific provision of section two, paragraph c, which provides that Deerfield is limited to the lesser amount of the real, public utility, and tangible personal property taxes that Mason actually collects or that Deerfield would have realized "but for" the annexation of the Territory.

taxes that would have been received by a party 'but for' an annexation the manifest intent of the parties is that such payments do not include money that is generated as a result of a subsequent change in state tax law." Mason argues that the replacement fund was not contemplated by either of the parties at the time of the agreement, and thus Deerfield is not entitled to any compensation under such a fund. Furthermore, Mason asserts that under the commercial activity tax, the county treasurer is to distribute amounts to the "proper local taxing unit as if they had been levied and collected as taxes * * *," and the statute does not require the treasurer to "look back in time" to determine the proper local taxing unit. Finally, Mason contends that the statute requires a written agreement between parties that must be certified by the commissioners by a certain date to receive any money from this fund when a portion of an unincorporated territory is annexed by a municipal corporation.

{¶ 22} Am.Sub.H.B. 66 created the commercial activity tax. As a part of the bill, the tangible personal property tax was phased out. R.C. 5711.22. However, at the same time, the bill replaced lost revenue due to the phasing out of the tax by ordering a portion of the commercial activity tax receipts to go to the "local government tangible property tax replacement fund." R.C. 5751.20(B).

{¶ 23} While this particular change in state law may not have been contemplated by the parties, as discussed above, the language "but for the annexation" indicates that Deerfield was to receive real, public utility, and tangible personal property taxes as if the Territory was still a part of Deerfield rather than Mason. If the Territory had not been annexed, Deerfield would be receiving reimbursement. Furthermore, a portion of the commercial activity tax receipts goes to the "local government tangible property tax replacement fund" to replace lost revenues due to the phasing out of the tangible personal property tax. R.C. 5751.20; Am.Sub.H.B. 66. While an agreement was not executed between the parties that complied with the statute, an agreement was already in place prior

to the change in state law that required such payment by Mason to Deerfield. Additionally, even if the statute does not require the treasurer to "look back in time" to determine the proper local taxing unit, Mason still has an obligation to pay Deerfield under the agreement. Consequently, we find that Deerfield is entitled to reimbursement.

{¶ 24} We find that reasonable minds can come to only one conclusion; Mason is required to reimburse Deerfield for the money it would have received absent the annexation for the fire and parks levies. We also find that reasonable minds can only come to the conclusion that Mason is required to reimburse Deerfield for the money it would have received absent the annexation due to changes in state law affecting the tangible personal property tax. Accordingly, Deerfield is entitled to judgment as a matter of law. Mason's first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE TRIAL COURT ERRED BY AWARDING PREJUDGMENT INTEREST TO BEGIN TO ACCRUE ON JANUARY 1 OF EACH APPLICABLE CALENDAR YEAR.

{¶ 27} Mason argues in its second assignment of error that the trial court erred in awarding Deerfield prejudgment interest because Deerfield did not properly request such interest. Furthermore, Mason argues that the trial court erred in specifying the accrual dates of prejudgment interest as January 1 from each annual payment that Mason should have made to Deerfield. We disagree.

{¶ 28} R.C. 1343.03(A) has been applied in awarding both prejudgment and postjudgment interest in contract causes of action. *Hance v. Allstate Ins. Co.*, 12th Dist. No. CA2008-10-094, 2009-Ohio-2809, ¶ 5. In *Hance*, we held that granting interest pursuant to R.C. 1343.03(A) is mandatory, rather than discretionary. *Id.* at ¶ 16. Because prejudgment interest is mandatory in this case, we find that the trial court did not err in awarding prejudgment interest despite the form of Deerfield's request, or lack of request, for

prejudgment interest.

{¶ 29} Mason concedes that according to *Landis v. Grange Mut. Ins. Co.*, 82 Ohio St.3d 339, 342 (1998), it is the trial court's responsibility to determine the accrual date of prejudgment interest once it has been awarded. This court reviews the trial court's determination of when prejudgment interest accrues under an abuse of discretion standard. *See Cox v. Grubb*, 12th Dist. No. CA2010-09-020, 2011-Ohio-1635, ¶ 34. More than an error of law or judgment, an abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 30} In this case, the trial court found that there were no references or stipulations as to an invoice date in the agreement that determined when Mason was to pay Deerfield. Mason was to make "annual" payments to Deerfield. The trial court found that all obligations set forth in the accompanying exhibits were in the form of calendar years. Consequently, the trial court found that the accrual of prejudgment interest was to run from January 1. Deerfield concedes that the January 1 accrual date is the January 1 after the taxes were collected. Despite any past practices, Mason would be able to calculate the amount of tax owed to Deerfield by this date. Given the agreement's references to annual payments and the ability of Mason to pay Deerfield taxes by January 1, we cannot say the decision of the trial court ordering prejudgment interest to accrue from January 1 each year was an abuse of discretion. Mason's second assignment of error is overruled.

{¶ 31} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.