[Cite as *Tallarigo v. Dryden*, 2013-Ohio-5496.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

DONTAE TALLARIGO, et al., :

    Plaintiffs-Appellants, : CASE NO. CA2013-06-045

     : O P I N I O N
- vs - 12/16/2013

     :

GRANT DRYDEN, et al., :

    Defendants-Appellees. :


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2011-CVH-1972


G. Ernie Ramos, Jr., 2115 Luray Avenue, Cincinnati, Ohio 45206, for plaintiffs-appellants

Joyce V. Kimbler, 50 South Main Street, Suite 502, Akron, Ohio 44308, for defendants-appellees


**S. POWELL, J.**

{¶ 1} Plaintiffs-appellants, John and Ginger Tallarigo, on behalf of their minor son, Dontae Tallarigo, appeal from the Clermont County Court of Common Pleas decision granting summary judgment to Grant Dryden, after Dontae was injured while riding his dirt bike. For the reasons outlined below, we affirm.

{¶ 2} On August 10, 2010, Grant, Ginger's younger brother and Dontae's uncle, picked up Dontae from the Tallarigos in order to take him to his grandparents' house for the

afternoon. David and Gerry Dryden, Ginger's parents and Dontae's grandparents, own approximately six acres of property in New Richmond, Clermont County, Ohio. Included on the Drydens' property is a wooded area that contains trails for dirt bikes and other all-terrain vehicles. Dontae, who was 11 years old at the time, had been riding dirt bikes on his grandparents' property since he was five years old. The Tallarigos store Dontae's dirt bike, a Honda XR-50, on the Drydens' property so that Dontae can ride when he is at his grandparents' house.

{¶ 3} Upon arriving at his grandparents' house that day, Dontae played on the computer and went for a swim in the pool with Grant, his uncle, as well as Grant's girlfriend and her sister. After he was done swimming, Dontae decided to ride his dirt bike. According to John Tallarigo, Dontae's father, the dirt bike could reach speeds of approximately 30 m.p.h. As a result, Dontae was trained to wear safety equipment whenever he rode his dirt bike, including a helmet, gloves, riding pants, and boots. As Dontae testified, he was to wear boots whenever he rode his dirt bike because "you could rip a toe off." However, Dontae did not have any boots available to him that day because he had outgrown his only pair and did not have any others available in his size.

{¶ 4} Shortly after getting his dirt bike out, Dontae began riding around the backyard and into the woods when the bike ran out of gas and stalled. Noticing the dirt bike had stalled, Grant, who had been supervising Dontae from the backyard pool area, helped Dontae fill up the gas tank and restart the bike. Once the bike was restarted, Dontae continued to ride the dirt bike around the backyard and into the woods. However, when Dontae did not emerge from the woods for several minutes, Grant got on his four-wheeler and proceeded towards the main entrance into the wooded area to check on his young nephew. As Grant testified, "I thought he stalled again. I figured, go help him try to restart it."

{¶ 5} After starting his four-wheeler, Grant then approached the main entrance to the

woods at approximately five to ten m.p.h.  Unfortunately, as Grant slowed to turn into the entrance to the woods, Dontae exited woods and collided with the front tire of Grant's four-wheeler.  In describing the collision, Dontae testified as follows:

> A:      Yes.  I went onto that dirt trail probably back about, I don't know, a couple, like 30 yards to the back around the fire pit, and I usually ramp out on this root, and –
>
> Q:      You usually what on this root?
>
> A:      I usually ramp over this root, because you get in the air and it's cool.
>
> Q:      Slow down.  Tell me that.  You ramp on this root because why?
>
> A:      Because you like get in the air and it's cool.
>
> Q:      And what do you mean you get in the air?  You mean you kind of –
>
> A:      Yeah, you go off the ground.
>
> Q:      Did you do that on this occasion, did you go off the ground when you were coming out?
>
> A:      Yes.  And by the time I hit the ground, I didn't have enough time to stop, so I hit his quad.

{¶ 6}   According to Dontae, he was travelling approximately 20 m.p.h. at the time of the collision.  As a result of the collision, Dontae lost the top portion of his left big toe. Dontae's grandparents were not at home when the collision occurred.

{¶ 7}   The Tallarigos subsequently filed a complaint on behalf of their son Dontae against Grant, Dontae's uncle, as well as the Drydens, Dontae's grandparents.  As part of their original complaint, the Tallarigos alleged Grant was negligent in his operation of the four-wheeler, and that the Drydens were negligent in their maintenance of their property. The Tallarigos subsequently filed an amended complaint adding claims alleging recklessness. The parties then both filed motions for summary judgment.  After holding a hearing on the

matter, the trial court granted summary judgment in favor of Grant and the Drydens on all claims. The Tallarigos now appeal from the trial court's decision, raising a single assignment of error for review.

{¶ 8} THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF PLAINTIFFS-APPELLANTS IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS-APPELLEES AND DENYING THE MOTION FOR SUMMARY JUDGMENT OF PLAINTIFFS-APPELLANTS.

{¶ 9} In their single assignment of error, the Tallarigos argue the trial court erred by granting summary judgment to Grant.[1] In support of this claim, the Tallarigos assert that "Grant did not take any action that would constitute ordinary care. In fact, his actions constitute recklessness." We disagree.

{¶ 10} Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.). On appeal, a trial court's decision granting summary judgment is reviewed de novo. *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998). In applying the de novo standard, the appellate court is required to "us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

{¶ 11} Pursuant to Civ.R. 56, a trial court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as

a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, ¶ 11 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

**{¶ 12}** To recover on a claim for negligence, one of the claims alleged by the Tallarigos, the plaintiff must prove (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Gentry v. Collins*, 12th Dist. Warren No. CA2012-06-048, 2013-Ohio-63, ¶ 13, citing *Wellman v. E. Ohio Gas Co.*, 160 Ohio St. 103, 108-109 (1953). However, the effect of raising primary assumption of the risk as a defense, if successful, "means that the duty element of negligence is not established as a matter of law, [preventing] the plaintiff from even making a prima facie case." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432 (1996). Primary assumption of the risk is a question of law. *Parker v. Patrick*, 12th Dist. Brown No. CA2011-12-027, 2012-Ohio-3312, ¶ 15.

---

1. Although the trial court also granted summary judgment in favor of the Drydens, the Tallarigos have not appealed that decision. Therefore, we will not address any issues regarding the trial court's decision granting summary judgment to the Drydens within this opinion.

{¶ 13} According to the Ohio Supreme Court, "where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional.'" *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 6, quoting *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), syllabus. "This rule has its genesis in the doctrine of primary assumption of the risk and is based on the rationale that a participant to a sporting event or recreational activity accepts the risks associated with the sport or activity." *Pope v. Willey*, 12th Dist. Clermont No. CA2004-10-077, 2005-Ohio-4744, ¶ 8. In other words, "[t]he doctrine relieves persons providing or taking part in a recreational activity from any duty to eliminate the risks that are so inherent in the activity or sport because such risks [cannot] be eliminated." *Id.* at ¶ 11, citing *Collier v. Northland Swim Club,* 35 Ohio App.3d 35, 37 (10th Dist.1987). In turn, "[b]y choosing to participate in an activity, the participant implicitly accepts those risks." *Deutsch v. Birk*, 189 Ohio App.3d 129, 2010-Ohio-3564, ¶ 12 (12th Dist.). "The types of risks associated with the activity are those that are foreseeable and customary risks of the sport or recreational activity." *Id.*, citing *Thompson v. McNeill*, 53 Ohio St.3d 102, 104-106 (1990).

{¶ 14} The Tallarigos do not dispute that Dontae was involved in a recreational activity while riding his dirt bike. *See Shaner v. Smoot*, 7th Dist. Carroll No. 712, 2001 WL 1243920, *2 (Oct. 12, 2001) (stating "[o]ff road motorcycling" is a recreational activity); *see also Boyd v. Watson*, 83 Ohio Misc.2d 88, 91 (C.P.1996) (no dispute that riding a "dirt bike" is a recreational activity). Nor do the Tallarigos dispute that it is foreseeable and customary risk to wreck and sustain an injury while riding a dirt bike. In fact, as the Tallarigos specifically state as part of their reply brief to this court, "[w]recking and sustaining some injury is a foreseeable risk of riding a dirt bike."

{¶ 15} Instead, the Tallarigos argue that the primary assumption of risk is inapplicable

here because "attendant circumstances" increased the risks to Dontae while he was riding his dirt bike. In support of this claim, the Tallarigos make reference to the fact that Dontae had been riding his dirt bike through the wooded area alone, that Dontae exited the wooded area from behind vegetation that blocked both his and Grant's view of the surrounding area, and that Grant could not hear the approaching dirt bike since the ATV he was riding was much louder. According to the Tallarigos, a collision under these circumstances was not foreseeable and does not constitute a customary and inherent risk when engaged in the recreational activity of riding a dirt bike.

{¶ 16} We fail to see how these factors negate the otherwise foreseeable and customary risks Dontae faced while riding his dirt bike that afternoon. Contrary to the Tallarigos' claim otherwise, we find it readily apparent that "[t]he sport of off-roading involves inherent risks that the participants in this recreational activity may be involved in inadvertent motor vehicle collisions[.]" *Distefano v. Forester*, 85 Cal.App.4th 1249, 1254 (2001). As noted above, Dontae had been riding dirt bikes since he was five years old and was well aware of the dangers associated with such activity. In fact, Dontae even admitted as part of his deposition testimony that colliding with other riders was a risk involved in riding his dirt bike. As Dontae testified, "there's always a chance that they could collide if someone's riding with them."

{¶ 17} In so holding, we find this case distinguishable from our previous decision in *Pope*, where this court found the cause of the injury in that case – a collision with a pick-up truck on a public road – was not an inherent and foreseeable danger to the recreational activity of riding an all-terrain vehicle. *Id.*, 2005-Ohio-4744 at ¶ 13-15. Unlike *Pope*, Dontae and Grant collided at the entrance of a wooded area that was specifically designed for use with dirt bikes and other all-terrain vehicles. In turn, just as the trial court found, we find this case more analogous to the litany of cases that have found skiing to include the ordinary risk

of inadvertent collisions with other skiers. This includes the Ohio Supreme Court's decision in *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, which found "skiers assume the ordinary risks of skiing, which include collisions with other skiers." *Id.* at ¶ 21. Therefore, because the risk of being involved in a collision with other participants engaged in off-roading is directly associated with the recreational activity of riding dirt bikes and other all-terrain vehicles, the Tallarigos cannot recover from Grant for Dontae's unfortunate injury unless it can be shown that Grant's actions were reckless or intentional.

{¶ 18} The Tallarigos do not make any allegations that Grant acted intentionally in causing the collision, nor is there any evidence to support such a claim. Rather, the Tallarigos merely argue Grant was reckless when he entered into the wooded area without coming to a complete stop to determine if Dontae was approaching, thus leading to the collision. We find no merit to this claim.

{¶ 19} The showing of "recklessness is subject to a high standard." *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, ¶ 37. As noted by the Ohio Supreme Court, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph four of the syllabus, adopting Restatement of the Law 2d, Torts, Section 500 (1965); *see also* Black's Law Dictionary 1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm). "Recklessness, therefore, necessarily requires something more than mere negligence." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, ¶ 73-74.

{¶ 20} As noted above, when Dontae did not emerge from the woods for several

minutes, Grant got on his four-wheeler and made his way towards the main entrance into the woods to check on his young nephew. While traveling towards the woods, Grant proceeded cautiously by traveling at an estimated speed of five to ten m.p.h. Grant slowed his four-wheeler even further when he began making his turn into the woods. According to Grant's deposition testimony, he had done this hundreds of times before without incident. However, as Grant was approaching the entrance to the woods, Dontae had accelerated his dirt bike to approximately 20 m.p.h. in order to make his customary exit from the woods by ramping off a nearby root and going airborne. As Dontae testified, "by the time I hit the ground, I didn't have enough time to stop, so I hit his quad."

{¶ 21} After reviewing the record, we find the collision between Dontae and Grant was nothing more than an accident, thereby precluding the Tallarigos from recovering against Grant for Dontae's unfortunate injury. Nothing about these events indicates Grant acted in a reckless manner. Rather, just as the trial court found, Grant's conduct was, at best, negligent. However, as stated previously, "where individuals engage in recreational or sports activities," such as the case here, "they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional.'" *Craycraft*, 2004-Ohio-379 at ¶ 6, quoting *Marchetti*, 53 Ohio St.3d at syllabus. Based on the facts and circumstances of this case, it simply cannot be said that Grant was acting in a reckless manner. The trial court, therefore, did not err in granting summary judgment to Grant as his actions were not reckless as a matter of law. Accordingly, the Tallarigos' single assignment of error is overruled.

{¶ 22} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.