[Cite as *Baruk v. Heritage Club Homeowners' Assn.*, 2014-Ohio-1585.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| PETER BARUK, et al., | : | CASE NO.   CA2013-09-086 |
| Plaintiffs-Appellants, | : |  |
|  | : | O P I N I O N<br>4/14/2014 |
| - vs - | : |  |
|  | : |  |
| HERITAGE CLUB HOMEOWNERS'<br>ASSOCIATION, et al., | : |  |
|  | : |  |
| Defendants/Appellees. | : |  |
|  | : |  |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 12CV82577

Thompson Hine, LLP, Anthony J. Hornbach, 312 Walnut Street, 14th Floor, Cincinnati, Ohio 45202, for plaintiffs-appellants

Joyce V. Kimbler, 50 South Main Street, Suite 502, Akron, Ohio 44302, for defendant-appellee, Heritage Club Homeowners' Association

Donald E. Schneider, 1011 St. Gregory Street, Suite 350, Cincinnati, Ohio 45202, for defendant-appellee, Heritage Club Homeowners' Association

Patsfall, Yeager & Pflum, LLC, Susan M. Salyer and Stephen M. Yeager, 205 West Fourth Street, Suite 1280, Cincinnati, Ohio 45202, for defendants-appellees, Evans & Cathy Nwankwo

**S. POWELL, J.**

{¶ 1}   Plaintiffs-appellants, Peter and Rosa Baruk, appeal from the decision of the

Warren County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Evans and Cathy Nwankwo and the Heritage Club Homeowners' Association, on various issues regarding a backyard construction project on the Nwankwos' property. For the reasons outlined below, we affirm in part, reverse in part and remand for further proceedings.

**Facts and Procedural History**

{¶ 2}   The Baruks and the Nwankwos are next-door neighbors living in the Heritage Club Subdivision (Subdivision) located in the City of Mason (City), Warren County, Ohio. The Subdivision serves as a premier golf club community within the greater Cincinnati area. Both the Baruks and Nwankwos are members of the Heritage Club Homeowners' Association (Association), who reside on property abutting the Heritage Club Golf Course. It is undisputed that both the Baruks' and the Nwankwos' property is designated R-2 residential property by the City's Zoning Code (Zoning Code). The City is not a party to this action.

{¶ 3}   As part of its responsibilities, the Association oversees the operation of a Design Review Committee (Committee). The Committee was established to review and approve building designs, exterior building or appearance alterations, building additions, site plans, and landscape plans, among others, within the Subdivision. In order to satisfy these responsibilities, the Association adopted an Architectural Design Guide (Design Guide). The Design Guide, which was developed to provide "broad guidelines for home construction," provides the design review guidelines, concepts, responsibilities and policies of the Committee. The Association has also established a Declaration of Covenants, Conditions, Restrictions, Easements and Liens (Declarations), to which it must adhere.

{¶ 4}   On July 5, 2011, the Nwankwos filed an improvement application with the Committee seeking approval for the construction of an outdoor living space on their property. According to the submitted improvement application, the construction project was to consist of a "covered gazebo attached to house and additional landscaping." As part of their

improvement application, the Nwankwos also submitted composite drawings of the proposed backyard construction project that included an open paved area, lighting, and – at the heart of this dispute – a fire pit area. In addition to seeking approval from the Committee, the Nwankwos also requested a building permit from the City. After receiving approval for the construction project from both the City and the Committee, the Nwankwos entered into a construction contract with Artisan Remodeling, LLC (Artisan). As they are not required by either the Design Guide or the Zoning Code, the Nwankwos did not seek approval for the backyard construction project from any of their neighbors within the Subdivision.

{¶ 5} On January 12, 2012, shortly after Artisan began construction on the project, the Baruks sent an e-mail to Association president, William Partridge, expressing their concerns regarding the close proximity of the fire pit area to their own property. As part of this e-mail, the Baruks classified the area in question as a "raised patio/firepit." Upon learning of their concerns, Partridge and Joan Graham, the chairperson of the Committee, conducted a site visit to the Baruks' property. The site visit revealed modifications to the original improvement application that were not previously approved by the Committee. These modifications included the construction of the fire pit area in an area near the Baruks' property line.[1]

{¶ 6} On January 21, 2012, the Committee held a special meeting to discuss the Nwankwos' construction project. As a result of this meeting, the Committee ultimately determined that the Nwankwos' modifications to the original improvement application were in violation of the Design Guide because they had not been approved prior to the start of construction. According to the Design Guide, all "[p]roposed changes in plans following approvals must be resubmitted in writing" to the Committee. The Committee also determined

that the construction of the fire pit area encroached upon the Design Guide's 15-foot setback requirements.

{¶ 7} On January 23, 2012, the Committee sent a letter to the Nwankwos ordering them to cease any further construction until a new improvement application regarding the modifications to the original improvement application was submitted and approved by the Committee. The Committee also stated as part of this letter, the following:

> The [Committee] noted the construction changes and modifications to the project that were not amended or approved by the [Committee]. Ultimately, the [Committee] determined that had the project plans been submitted with these modifications as the original plans, it would not have been approved. The basis for the denial would have been the failure to observe set back requirements as described in community design guidelines. This is a golf course lot and the set backs (per policy) are 15 feet from the side property lines and 30 feet from the back property line.

On January 30, 2012, the Committee sent a similar letter to Artisan that contained the same basic allegations. Per the Design Guide provisions, the Nwankwos appealed to the Association from the Committee's decision finding them to be in violation of the Design Guide.

{¶ 8} After the Nwankwos filed their appeal, the Association attempted to schedule a meeting between the Baruks and the Nwankwos to discuss their concerns regarding the construction project in hopes that they could come to a mutually-agreed-upon solution. The Baruks declined the Association's offer to meet. The Baruks, however, did meet with Partridge at a local restaurant, where they voiced their concerns regarding the close proximity of the fire pit area to their property. During this meeting, Partridge encouraged the Baruks to attend the Nwankwos' upcoming appeal hearing.

---

1. It should be noted that the original drawings submitted with the improvement application were not to scale and actually showed the fire pit area being constructed on the Baruks' property. The Committee, however, approved the improvement application after misinterpreting the submitted drawings in regards to the Baruks' property line.

{¶ 9} On March 14, 2012, the Association held a hearing on the Nwankwos' appeal. It is undisputed that the Baruks attended the appeal hearing, but requested not to speak or be asked any questions.

{¶ 10} On April 14, 2012, the Association issued a decision reversing the Committee's decision thus permitting the Nwankwos to complete the construction project and fire pit area. In reversing the Committee's decision, the Association determined that the fire pit area constituted a "patio" that was exempt from the Design Guide's 15-foot setback requirements. As the Design Guide explicitly states:

> Decks, porches, wing walls and other items attached to the house are considered to be part of the house property and will not be allowed to encroach into side or rear yard setbacks, except as variations in the case of unique site characteristics, which the [Committee] may consider on a case-by-case basis. **Patios, driveways, walks, etc., may usually encroach into setback areas.**

(Emphasis added.)

{¶ 11} However, in an apparent attempt to accommodate both parties, the Association ordered the Nwankwos to employ additional landscaping and berm construction to ensure privacy and conceal the disputed fire pit area from the Baruks' view. The Association also assessed the Nwankwos a penalty for their failure to have the modifications to the project approved by the Committee before construction began. The Nwankwos paid the assessment on April 17, 2012.

{¶ 12} After learning of the Association's decision, the Baruks requested their own appeal hearing, which was denied. The Baruks also contacted the City regarding the building permit issued for the construction project. In response to the Baruks' inquiry, the City sent an e-mail to Mrs. Baruk on April 20, 2012, that stated, in pertinent part, the following:

> The patio and associated fire pit were not shown on the permit drawings that were submitted to the City from what I could see, as it would have not been required, due to these not being

regulated by the City's zoning code.

Continuing, the City also stated as part of this exchange:

> The fire pits that are typically associated with at-grade paver and or poured concrete patios, have not been regulated for zoning and or building code purposes (i.e. setbacks relative to property lines) for residential applications.

The April 20, 2012 e-mail was attached as an exhibit to Mrs. Baruk's deposition. Mrs. Baruk readily admits that she received this e-mail from the City. The Baruks, however, never took any action in response to the City's determination that the construction project was permitted.

{¶ 13} The backyard construction project, including the modified fire pit area and additional landscaping, was completed in June of 2012. According to the Nwankwos' deposition testimony, since its completion, the fire pit has been lit a maximum of four times, including once for the neighborhood Christmas party. In addition, the Nwankwos acknowledge that they have used the fire pit area sporadically for social gatherings, such as their daughter's high school graduation party, which have extended into the late evening hours. The Baruks, however, have never called the police or otherwise complained about these gatherings to the Association.

{¶ 14} On July 31, 2012, the Baruks filed suit against the Nwankwos and the Association, raising a variety of claims regarding the backyard construction project, and specifically the fire pit area. As part of their complaint, the Baruks argued the construction of the fire pit area violated the setback requirements of both the Zoning Code and the Design Guide. The Baruks also alleged claims of negligence, negligence per se, breach of contract, breach of fiduciary duty, as well as common law nuisance and trespass.

{¶ 15} After discovery had concluded, all parties filed motions for summary judgment. Included as part of the Nwankwos motion was an affidavit from Gregory Nicholls, the chief building official from the City, which referenced the fact that the City had informed the Baruks

that "pavers/slabs/walks/patios on grade were allowed in the zoning setbacks" and that the Nwankwos construction of the fire pit "was not in violation of any of the City of Mason's zoning ordinances." Again, although acknowledging that they had notice of the City's findings, it is undisputed that the Baruks never challenged the City's determination through a declaratory judgment, through an administrative appeal, or by joining the City as a necessary party to this action.

{¶ 16} In ruling on the parties' competing motions, the trial court issued a decision on July 26, 2013 that denied the Baruks' motion for partial summary judgment in its entirety, granted the Association's motion for summary judgment in its entirety, and granted in part and denied in part the Nwankwos' motion for summary judgment. In so holding, the trial court explicitly stated:

> [W]e agree with the Nwankwos and the [Association] and conclude that the fire pit area falls within the definition of a patio. Concluding that this area is anything other than a patio would be an unreasonable stretch of the imagination.

As a result of the trial court's decision, the only causes of action to survive summary judgment were the Baruks' claims against the Nwankwos alleging common law trespass and nuisance.

{¶ 17} Following the trial court's decision, the Baruks filed a notice of voluntary dismissal, without prejudice, regarding their claims of common law trespass and nuisance against the Nwankwos. Although not explicit, this notice falls under the confines of Civ.R. 41(A) regarding voluntary dismissals and the effects thereof. The Baruks' notice of voluntary dismissal also stated that since "no other claims are pending in this action" as a result of the trial court's summary judgment decision, that decision was now rendered a final appealable order.

{¶ 18} Upon receiving the Baruks' notice of voluntary dismissal, the trial court issued

an entry on September 6, 2013 styled "Final Judgment Entry" that stated, in pertinent part, the following:

> In light of the fact that [the Baruks] have voluntarily dismissed the claims that survived summary judgment, there are no claims remaining for adjudication. Accordingly, this is a final judgment, and there is no just cause for delay.

The Baruks then filed a notice of appeal with this court, raising eight assignments of error for review. Neither the Nwankwos nor the Association filed a cross-appeal in this matter.

**Final Appealable Order**

{¶ 19} Although neither filed a cross-appeal, as part of their responsive briefs, both the Nwankwos and the Association claim this court lacks jurisdiction in this matter as the trial court's decision is not a final appealable order in light of the Baruks' voluntary dismissal, without prejudice, as outlined by the Ohio Supreme Court's decision in *Pattison v. W.W. Grainger, Inc.*, 120 Ohio St.3d 142, 2008-Ohio-5276. In response, the Baruks claim the issue of whether this court is faced with a final appealable order has been waived since neither party filed a notice of appeal from the trial court's decision, nor did they file any objection to the Baruks' voluntary dismissal before the trial court.

{¶ 20} Contrary to the Baruks' claim otherwise, it is well-established that if an order appealed from is not final and appealable, a court of appeals has no jurisdiction to rule on the appeal and must dismiss it, sua sponte, even if neither party has raised the issue. *Ossai-Charles v. Charles*, 188 Ohio App.3d 503, 2010-Ohio-3558, ¶ 12 (12th Dist.). In other words, "the lack of a final appealable order goes to the issue of subject matter jurisdiction which cannot be waived and may be raised sua sponte by an appellate court." *Galloway v. Firelands Local School Dist. Bd. of Edn.*, 9th Dist. Lorain No. 12CA010208, 2013-Ohio-4264, ¶ 6, citing *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82, 84 (1996). Therefore, although neither the Nwankwos nor the Association raised this issue previously,

- 8 -

the Baruks' claim that this issue was waived on appeal is simply incorrect. Accordingly, before we are able to reach the merits of this appeal, we must first determine whether the trial court's decision is a final appealable order.

{¶ 21} In *Pattison*, an employee brought two claims against his employer alleging age discrimination and wrongful termination. The trial court granted summary judgment to the employer on the age discrimination claim and the employee appealed. In ruling on the appeal, the Eighth District Court of Appeals dismissed the employee's appeal "for want of a final appealable order under Civ.R. 54(B) because the public policy claim remained extant." *Pattison v. W.W. Grainger, Inc.*, 8th Dist. Cuyahoga No. 88556, 2007-Ohio-3081, ¶ 2. The employee then filed a notice in the trial court, pursuant to Civ.R. 41(A)(1)(a), voluntarily dismissing his public policy claim without prejudice. A journal entry noting the public policy claim was dismissed was then filed by the trial court. The employee then filed a second notice of appeal from the trial court's summary judgment decision.

{¶ 22} In ruling on the new appeal, the Eighth District determined that while it ordinarily would have jurisdiction to rule on the matter, the appeal was nevertheless untimely. However, acknowledging that its decision finding jurisdiction was otherwise proper "conflicted with the near unanimity" of other appellate districts, the Eighth District certified the following conflict to the Ohio Supreme Court:

> In a case where a plaintiff has asserted multiple claims against a single defendant and some of those claims have been ruled upon but not converted into a final order with Civ.R. 54(B), can the plaintiff create a final order by voluntarily dismissing pursuant to Civ.R. 41(A) the remaining claims asserted against that defendant?

*Pattison*, 2008-Ohio-5276 at ¶ 9-10.

{¶ 23} In answering the certified question in the negative, the Ohio Supreme Court stated the following:

We hold today that when a plaintiff has asserted multiple claims against one defendant, and some of those claims have been ruled upon but not converted into a final order through Civ.R. 54(B), the plaintiff may not create a final order by voluntarily dismissing pursuant to Civ.R. 41(A) the remaining claims against the same defendant.

*Id.* at ¶ 1.

In so holding, the Ohio Supreme Court specifically stated:

To allow a partial Civ.R. 41(A) dismissal is potentially prejudicial to defendants. In cases in which all claims against a party are dismissed without prejudice, there still is the risk of the action being refiled, but the amount of potential litigation that a defendant is subjected to is the same. When an individual claim against a defendant is dismissed without prejudice, however, the defendant is forced to go through the appeal process and may perhaps still be subjected to the dismissed claim upon refiling. The defendant in that situation is vulnerable to an increased overall burden due to the Civ.R. 41 dismissal.

*Id.* at ¶ 20.

{¶ 24} The Ohio Supreme Court later upheld this ruling in *Dohme v. Eurand Am., Inc.*, 121 Ohio St.3d 277, 2009-Ohio-506, a case which it described as "indistinguishable from *Pattison.*" *Id.* at ¶ 5. We also applied the rationale in *Pattison* to our own decision in *Welsh Dev. Co., Inc. v. Warren Cty. Regional Planning Comm.*, 12th Dist. Warren No. CA2008-02-026, 2009-Ohio-1158.

{¶ 25} This case, however, presents a slightly different factual scenario than the Ohio Supreme Court's decisions in *Pattison* and *Dohme*, as well as our own decision in *Welsh*. As noted above, after the trial court issued its decision regarding the parties various motions for summary judgment, the Baruks filed a notice of voluntary dismissal, presumably under Civ.R. 41(A), dismissing their common law trespass and nuisance claims against the Nwankwos without prejudice. The trial court then issued an entry incorporating its decision that specifically stated it was "a final judgment, and there is no just cause for delay." This is the same essential language necessary to create a final appealable order as found in Civ.R.

- 10 -

54(B). *See, e.g., Stealth Investigations, Inc. v. Mid-Western Auto Sales, Inc.*, 12th Dist. Butler No. CA2009-08-216, 2010-Ohio-327 (finding no final appealable order where the entry contained no Civ.R. 54(B) language indicating no just reason for delay).

{¶ 26} Yet, although technically distinguishable due to the trial court's subsequent entry finding no just cause for delay, we find this case still creates the same potential prejudice to the Nwankwos that the Ohio Supreme Court was attempting to avoid with its decision in *Pattison*. Simply stated, because the voluntary dismissal in this case was without prejudice, there is still a risk that the Baruks will refile their common law claims alleging trespass and nuisance against the Nwankwos after this appeal is decided. Again, as stated in *Pattison*:

> When an individual claim against a defendant is dismissed without prejudice, however, the defendant is forced to go through the appeal process and may perhaps still be subjected to the dismissed claim upon refiling. The defendant in that situation is vulnerable to an increased overall burden due to the Civ.R. 41 dismissal.

*Id.*, 2008-Ohio-5276 at ¶ 20.

{¶ 27} This case presents a markedly different set of facts than had the Baruks' remaining claims been dismissed with prejudice. *See, e.g., Groen v. Children's Hospital Medical Center*, 1st Dist. Hamilton No. C-100835, 2012-Ohio-2815 (finding trial court's decision granting summary judgment was a final appealable order regarding one claim from a multi-count complaint where appellant subsequently dismissed the remaining claim with prejudice). Furthermore, in light of the Ohio Supreme Court's decision in *Pattison*, it is now well-established that Civ.R. 41(A) "does not allow for the dismissal of a portion of the claims against a certain defendant." *GLA Water Mgt. v. Univ. of Toledo*, 196 Ohio App.3d 290, 2011-Ohio-5034, ¶ 17 (6th Dist.), quoting *Pattison*, 2008-Ohio-5276 at ¶ 18. Rather, according to *Pattison*, "the proper procedure for a plaintiff to dismiss fewer than all claims

against a single defendant is to amend the complaint pursuant to Civ.R. 15(A)." *Id.* at ¶ 19.

{¶ 28} We find the Baruks' attempts to voluntarily dismiss only those claims that survived summary judgment, i.e., their common law trespass and nuisance claims against the Nwankwos, was a nullity and those claims remain pending. *See, e.g., Perez Bar & Grill v. Schneider*, 9th Dist. Lorain No. 09CA009573, 2010-Ohio-1352, ¶ 7 (finding voluntary dismissal was a nullity and claims remain pending as Civ.R. 41(A) does not permit a party to dismiss anything less than all claims against any one party). This is true even where the parties agreed on the voluntary dismissal. *See Savage v. Cody-Ziegler, Inc.*, 4th Dist. Athens No. 06CA5, 2006-Ohio-2760, ¶ 35 ("Because Count II of Appellants' complaint could not be dismissed under Civ.R. 41(A), the 'Agreed Entry of Voluntary Dismissal' of that count is a nullity and Count II of the complaint remains pending.").

{¶ 29} Nevertheless, as noted above, the trial court in this case actually issued an entry incorporating its summary judgment decision that specifically stated it was "a final judgment, and there is no just cause for delay" under Civ.R. 54(B). As this court has stated previously, when an action involves multiple claims or multiple parties and the lower court's order does not dispose of all the claims against all the parties, absent an express certification under Civ.R. 54(B) that there is "no just reason for delay," the order is typically not final and appealable. *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2008-07-024 and CA2008-07-028, 2009-Ohio-1649, ¶ 21, citing *Jarrett v. Dayton Osteopathic Hosp., Inc.*, 20 Ohio St.3d 77 (1985), syllabus.

{¶ 30} For purposes of a Civ.R. 54(B) certification, the trial court must make a factual determination as to whether an interlocutory appeal is consistent with the interests of sound judicial administration. *Dywidag Sys. Internatl., USA., Inc. v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 10AP-270, 2010-Ohio-3211, ¶ 27, citing *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352 (1993), paragraph one of the syllabus. However, "the phrase 'no just

reason for delay' is not a mystical incantation which transforms a nonfinal order into a final appealable order." *Wisintainer* at 354; *see also Bell v. Turner*, 191 Ohio App.3d 49, 2010-Ohio-4506, ¶ 11 (4th Dist.) (finding the trial court's use of the "magic language" of Civ.R. 54(B) does not, by itself, convert a final order into a final appealable order).

**{¶ 31}** After a thorough review of the record, we find the trial court intended this matter to be subject to review as a result of its inclusion of the Civ.R. 54(B) language indicating there was no just reason for delay. Our decision is supported by similar decisions issued by the Seventh and Ninth District Courts of Appeal. For instance, in *Kosut v. First Energy*, 7th Dist. Jefferson No. 12 JE 8, 2013-Ohio-2876, the Seventh District found the following:

> Applying the above law to the case at hand, because Kosut attempted to dismiss all "remaining" claims against Harsco, she attempted to dismiss some, but not all, of her claims against Harsco. Hence, her Civ.R. 41(A) attempt was a nullity. Therefore, all of Kosut's claims against Harsco are still viable. Furthermore, because the trial court included the Civ.R. 54(B) language in its judgment entry granting summary judgment to Harsco on Kosut's retaliation and intentional infliction of emotional distress claims, this is a final, appealable order. Therefore, we have jurisdiction in this case over the claims relating to Harsco.

*Id.* at ¶ 23.

**{¶ 32}** The Ninth District Court of Appeals reached the same conclusion in *Foley v. Empire Die Casting Co., Inc.*, 9th Dist. Summit No. 24558, 2009-Ohio-5539. Specifically, as the Ninth District stated in *Foley*:

> On March 10, 2008, Foley filed a notice of voluntary dismissal of count three, his personal claim alleging a violation of R.C. 1335.11. While the Ohio Supreme Court does not recognize a voluntary dismissal pursuant to Civ.R. 41(A) as an appropriate mechanism by which a party may dismiss fewer than all his claims against another party, * * * this Court need not discuss the effect of Foley's notice in this case. Although count three remains pending, the trial court's judgment included the requisite language pursuant to Civ.R. 54(B) to confer upon this Court jurisdiction to consider the merits of the appeal.

(Internal citation omitted.)  *Id.* at ¶ 4.

**{¶ 33}** In addition, as the Ninth District stated in *Ningard v. Shin-Etsu Silicones of Am., Inc.*, 9th Dist. Summit No. 24524, 2009-Ohio-3171:

> In the instant case, the trial court used the Civ.R. 54(B) language.  Despite Ningard's failed attempt to dismiss the remaining portion of her claims [under Civ.R. 41(A)], we conclude that the trial court has properly converted the judgment into a final order.  However, we have consistently held that an order denying summary judgment is generally not a final, appealable order.  Accordingly, Ningard could appeal to this Court regarding the claims upon which the trial court entered final judgment, i.e., the partial grant of Shin-Etsu's summary judgment.

*Id.* at ¶ 9; *see also Miller v. Foster*, 9th Dist. Summit Nos. 24186 and 24209, 2009-Ohio-2675, ¶ 10.

**{¶ 34}** Whether a court enters a judgment pursuant to Rule 54(B) is within its sound discretion.  *Hawk v. American Electric Power Co.*, 3d Dist. Allen No. 1-04-01, 2004-Ohio-3549, ¶ 9, citing *Noble v. Colwell*, 44 Ohio St.3d 92 (1989).  After a thorough review of the record, we find no abuse of discretion here.  Therefore, although the Baruks' claims alleging common law trespass and nuisance remain pending, we nevertheless conclude that the trial court's decision regarding the parties' competing motions for summary judgment in this matter is a final appealable order subject to our review.

**Summary Judgment Standard of Review**

**{¶ 35}** Summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial.  *Roberts v. RMB Ents., Inc.*, 197 Ohio App.3d 435, 2011-Ohio-6223, ¶ 6 (12th Dist.).  On appeal, a trial court's decision granting summary judgment is reviewed de novo.  *Moody v. Pilot Travel Ctrs., L.L.C.*, 12th Dist. Butler No. CA2011-07-141, 2012-Ohio-1478, ¶ 7, citing *Burgess v. Tackas*, 125 Ohio App.3d 294, 296 (8th Dist.1998).  In applying the de novo standard, the appellate court is required to "us[e] the same standard that the trial court should have used, and * * * examine the

evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.), quoting *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383 (8th Dist.1997).

{¶ 36} Pursuant to Civ.R. 56, a trial court may grant summary judgment only when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion that is adverse to the nonmoving party. *BAC Home Loans Servicing, L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.). The party moving for summary judgment bears the initial burden of demonstrating that no genuine issue of material fact exists. *Touhey v. Ed's Tree & Turf, L.L.C.*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 7 (12th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996).

{¶ 37} Once this burden is met, the nonmoving party must then present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. *Smedley v. Discount Drug Mart, Inc.*, 190 Ohio App.3d 684, 2010-Ohio-5665, ¶ 11 (12th Dist.). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.*, 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10. We are mindful of these principles in addressing the following assignments of error.

### Assignment of Error No. 1

{¶ 38} THE TRIAL COURT ERRED BY GRANTING THE NWANKWOS' MOTION FOR SUMMARY JUDGMENT AND BY DENYING THE BARUKS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' STATUTORY CLAIM UNDER R.C. §713.13 AND §1135.08 OF THE CITY OF MASON'S ZONING CODE.

{¶ 39} In their first assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Nwankwos because the construction of the fire pit area

constitutes a violation of R.C. 713.13 and Section 1135.8 of the Zoning Code.  We disagree.

{¶ 40} Pursuant to R.C. 713.13:

> No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution.  In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation.

Similarly, under Section 1135.8 of the Zoning Code:

> No person shall locate, erect, construct, reconstruct, enlarge, change, maintain or use any building or land in violation of any of the provisions of this Zoning Ordinance, or any amendment or supplement thereto adopted by Council.

Should such a violation occur, Section 1135.7 of the Zoning Code provides:

> In case any building is or is proposed to be located, erected, constructed, reconstructed, enlarged, changed, maintained or used, or any land is or is proposed to be used in violation of this Zoning Ordinance or any amendment or supplement thereto, Council, the Law Director, the Zoning Administrator of the City of Mason, or any adjacent or neighboring property owner who would be specially damaged by such violation may, in addition to other remedies provided by law, institute appropriate action or proceedings to prevent such unlawful location, erection, construction, reconstruction, alteration, conversion, maintenance, or use to restrain, correct or abate such violation; to prevent the occupancy of such building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.

{¶ 41} Taken together, in order to bring a claim under either R.C. 713.13 or Section 1135.8 of the Zoning Code entitling them to an injunction against the Nwankwos, the Baruks must prove that they were "especially damaged" by the alleged zoning violation.  *See Conkle v. S. Ohio Med. Ctr.*, 4th Dist. Scioto No. 04CA2973, 2005-Ohio-3965, ¶ 13.  This "especial damage" standard requires less than the general "irreparable harm" standard.  *Id.*; *Columbiana v. J & J Car Wash, Inc.*, 7th Dist. Columbiana No. 04 CO 20, 2005-Ohio-1336, ¶

20. Nevertheless, setting aside the issue of whether the Baruks could establish that they were "especially damaged," we find the undisputed evidence indicates the construction of the fire pit does not constitute a violation of the Zoning Code as a matter of law.

{¶ 42} As noted above, it is undisputed that the Baruks' and Nwankwos' respective properties are classified as R-2 residential property under the Zoning Code. As relevant here, Section 1147.5 of the Zoning Code provides a minimum 15-foot side and rear setbacks for "accessory structures" on property classified as R-2. As provided by Section 1133.3 of the Zoning Code, an "accessory use or structure" is defined as the following:

> A use or structure constructed or installed on, above, or below the surface of a parcel, which is located on the same lot as a principal use or structure and which is subordinate to or serves the principal use or structure, is subordinate in area to the principal use or structure, and is customarily incidental to the principal use or structure. "Accessory use" includes anything of a subordinate nature detached from a principal structure or use, such as fences, walls, sheds, garages, parking places, decks, poles, poster panels, and billboards. "Accessory use" does not mean or include structures providing utility service to the parcel, such as gas, electric, or water.

Pursuant to Section 1133.150 of the Zoning Code, a "structure" is defined as:

> Anything constructed or erected, the intended use of which requires permanent or stationary location on the ground or which is attached to something having a permanent or stationary location on the ground, including paved areas and signs.

{¶ 43} Based on these definitions, the Baruks claim the construction of the fire pit area constitutes a violation of the Zoning Code because it is an "accessory structure" that encroaches onto the 15-foot setback requirements. The Baruks' claim, however, is in direct conflict with the City's own determination that found no violation of the Zoning Code, as well as the City's decision to issue the Nwankwos a permit allowing for the construction. In fact, the City specifically addressed the Baruks' allegations as evidenced by the April 20, 2012 e-mail attached as an exhibit to Mrs. Baruk's deposition. As the City explicitly informed the

Baruks as part of that e-mail prior to them filing suit in this matter:

> The patio and associated fire pit were not shown on the permit drawings that were submitted to the City from what I could see, as it would have not been required, due to these not being regulated by the City's zoning code.

Continuing, the City also stated:

> The fire pits that are typically associated with at-grade paver and or poured concrete patios, have not been regulated for zoning and or building code purposes (i.e. setbacks relative to property lines) for residential applications.

This determination was also contained in an affidavit from Gregory Nicholls, the chief building official with the City, which stated the City informed the Baruks that "pavers/slabs/walks/patios on grade were allowed in the zoning setbacks" and that the Nwankwos' construction of the fire pit area "was not in violation of any of the City of Mason's zoning ordinances."

{¶ 44} The Baruks disagree with the City's interpretation of the Zoning Code and administrative decision to issue the Nwankwos a building permit. However, it is undisputed that the Baruks never challenged the City's decisions through an administrative appeal or by joining the City as a necessary party in this action. "[T]he proper remedy was to appeal the administrative decision pursuant to R.C. 2506.01, not seek equitable relief pursuant to R.C. 713.13." *Murray Energy Corp. v. Pepper Pike*, 8th Dist. Cuyahoga No. 90420, 2008-Ohio-2818, ¶ 16; *see also Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 35 (recognizing an administrative appeal or declaratory judgment as the "appropriate means to challenge a zoning resolution").

{¶ 45} Moreover, if the Baruks' goal was to obtain a court order compelling the City to enforce the Zoning Code, case law indicates that the proper way in which to do so is by a petition for a writ of mandamus. *See Throckmorton v. Hills Communities, Inc.*, 2d Dist. Greene No. 99CA89, 2000 WL 770554, *3 (June 16, 2000) ("if Throckmorton's goal was to

obtain a court order compelling Beavercreek to enforce the zoning code, the proper way in which to do so is by a petition for a writ of mandamus"). Unfortunately, the Nwankwos failed to raise these issues as affirmative defenses. Nevertheless, after a thorough review of the record, which includes Nicholls' affidavit, the City's April 20, 2010 e-mail attached as an exhibit to Mrs. Baruk's deposition, and the fact that the City issued a permit for the project, we find the Nwankwos' construction project at issue here does not violate the Zoning Code as a matter of law.

{¶ 46} The Baruks, however, claim that Nicholls' affidavit evidencing the construction project did not constitute a Zoning Code violation is inadmissible evidence that must not be considered for summary judgment purposes. Pursuant to Civ.R. 56(E), affidavits submitted to support or oppose a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated in the affidavit." Personal knowledge is defined as "'knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay.'" *State ex rel. Varnau v. Wenninger*, 12th Dist. Brown No. CA2009-02-010, 2011-Ohio-3904, ¶ 8, quoting *Re v. Kessinger*, 12th Dist. Butler No. CA2007-02-044, 2008-Ohio-167, ¶ 32. "Information in affidavits that is not based on personal knowledge and does not fall under any of the permissible exceptions to the hearsay rule may be properly disregarded by the trial court when granting or denying summary judgment." *Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, ¶ 16.

{¶ 47} In support of their claim that Nicholls' affidavit is inadmissible, the Baruks cite to the Second District Court of Appeals decision in *Witzmann v. Adam*, 2d Dist. Montgomery No. 23352, 2011-Ohio-379, which generally held "[a]n expert witness is not permitted to give an opinion relating to the law, and a trial court that allows such an opinion abuses its

discretion." The issue in that case was whether the trial court erred by permitting the cross-examination of an expert witness on the legal concepts of burden of proof, standard of care, and negligence in a medical malpractice case. In this case, however, the issue is whether Nicholls' affidavit is proper summary judgment evidence. As these cases address drastically different issues, we fail to see how the Second District's decision in *Witzmann* is applicable here.

**{¶ 48}** Nicholls' affidavit does not reference intricacies of the law or cumbersome legal concepts. Rather, Nicholls' affidavit merely provides the fact that the construction and placement of "pavers/slabs/walks/patios" are not regulated by the City for zoning or building code purposes. In making this determination, the City exercised its discretion in making a reasonable interpretation of its own Zoning Code. *See McDowell v. Gahanna*, 10th Dist. Franklin No. 08AP-1041, 2009-Ohio-6768, ¶ 22. Moreover, as Nicholls serves as the chief building official for the City, we find he is competent to submit an affidavit that includes this finding. Again, as Nicholls' affidavit specifically states, "[i]t is and continues to be the staff opinion of the City of Mason Building Department that the Nwankwos' addition was not in violation of any of the City of Mason zoning ordinances."

**{¶ 49}** As noted above, it is apparent that the Baruks disagree with this determination, as well as the City's decision to issue the Nwankwos a building permit for the construction project. Yet, as a clear reading of Nicholls' affidavit indicates, and based on the fact that the City actually issued a building permit in this matter, the City has already determined that no violation of the Zoning Code exists. Besides their own vague allegations regarding the proper interpretation and application of the Zoning Code, the Baruks have provided no evidence to refute the fact that construction projects like the one at issue here are not regulated by the City for zoning or building code purposes. *See generally Graber v. Henning*, 5th Dist. Stark No. 2004-CA-00201, 2005-Ohio-744, ¶ 31-33 (finding summary judgment was

proper where appellant did not provide any evidence to combat affidavit of expert witness providing opinion that appellee discharged his duties towards appellant in a legal malpractice claim). This is most likely due to the fact that such a strict application of the Zoning Code would also place the Baruks' own driveway, sidewalk, retaining wall, and basketball hoop in violation of the Zoning Code.[2]

{¶ 50} As noted above, once the Nwankwos met their burden on summary judgment, the Baruks as the nonmoving party were required to present evidence to show that there is some issue of material fact yet remaining for the trial court to resolve. Simply stated, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991), paragraph three of the syllabus, citing *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). In light of the record submitted before this court, and based on a strict application of Civ.R. 56, we find the Baruks have failed their burden here.

{¶ 51} We believe the dissent has misinterpreted our holding in this matter. Our decision should not be construed to mean the Baruks are "stuck" with the City's interpretation of the Zoning Code. Nor should our decision be read to limit the rights of any owner of any contiguous or neighboring property who would be especially damaged from bringing a private cause of action under R.C. 713.13. Rather, we find the record before this court establishes the Nwankwos' construction of the fire pit area at issue here does not violate the Zoning Code as a matter of law. This is confirmed by the fact the City issued a building permit for the Nwankwos' construction project, as well as the uncontroverted evidence found in Nicholls' affidavit and the City's April 20, 2012 e-mail attached as an exhibit to Mrs. Baruk's deposition,

---

2. According to Mr. Baruk, the retaining wall on the side of his property is not, in fact, a retaining wall. Rather, as part of his sworn deposition testimony, Mr. Baruk testified the area in question was merely a set of "stacked landscaping blocks."

that establishes construction projects like the one at issue here are simply not regulated by the City for zoning or building code purposes.

{¶ 52} Moreover, although statutorily permitted to bring a private cause of action under R.C. 713.13, we note that private enforcement by any alleged aggrieved resident within the City could result in no uniformity at all between this or any other provision within the Zoning Code. This is particularly true in this case considering the evidence properly submitted here. Again, the evidence in this case establishes that construction projects like the one at issue are not regulated by the City for zoning or building code purposes. This creates a uniform application of the Zoning Code throughout the City, not a piecemeal construction based on sporadic complaints from an allegedly aggrieved neighbor.

{¶ 53} Finally, we disagree with the dissent's assertion that our decision implicitly confers legislative power upon Nicholls in his role as chief zoning administrator merely because he does not issue permits for fire pit areas like that constructed in the Nwankwos' backyard. There is no dispute that neither the Zoning Code nor city council has ever granted Nicholls such powers. Moreover, if city council disagreed with his application of the Zoning Code, Nicholls surely would have been so directed or removed from his position with the City, neither of which has happened here. Rather, Nicholls' application of the Zoning Code was actually confirmed by the City.

{¶ 54} It bears repeating, this is a summary judgment decision that is reviewed by this court de novo, not an administrative appeal brought pursuant to R.C. Chapter 2506. As the parties are well aware, summary judgment is a procedural device used to terminate litigation when there are no issues in a case requiring a formal trial. Based on the facts and circumstances of this case, we find the record before us on summary judgment establishes no violation of the Zoning Code resulting from the construction project on the Nwankwos' property as a matter of law. Therefore, as we find no violation of the Zoning Code exists, the

Baruks' were not entitled to any relief therefrom. Accordingly, the Baruks' first assignment of error is overruled.

**Assignment of Error No. 2**

{¶ 55} THE TRIAL COURT ERRED BY GRANTING THE NWANKWOS' MOTION FOR SUMMARY JUDGMENT AND DENYING THE BARUKS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' NEGLIGENCE CLAIM.

{¶ 56} In their second assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Nwankwos in regards to their claim alleging negligence per se resulting from the Nwankwos' alleged Zoning Code violation. However, in light of our finding no violation of the Zoning Code under the Baruks' first assignment of error, we likewise find no merit to the Baruks' second assignment of error. Accordingly, the Baruks' second assignment of error is overruled.

**Assignment of Error No. 3**

{¶ 57} THE TRIAL COURT ERRED BY GRANTING THE NWANKWOS' MOTION FOR SUMMARY JUDGMENT AND DENYING THE BARUKS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' BREACH OF CONTRACT CLAIMS ARISING FROM THE NWANKWOS' VIOLATIONS OF THE HOA'S SETBACK AND DRAINAGE RESTRICTIONS.

{¶ 58} In their third assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Nwankwos in regards to their breach of contract claim because the construction of the fire pit area constitutes a violation of the Design Guide's setback requirements and drainage restrictions.

{¶ 59} It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. *Kitchen v. Lake Lorelei Property Owners' Assn. Inc.,* 12th Dist. Brown Nos. CA2001-10-016 and CA2001-10-

018, 2002-Ohio-2797, ¶ 27, citing *The Bluffs of Wildwood Homeowners' Assn., Inc. v. Dinkel*, 96 Ohio App.3d 278, 282 (12th Dist.1994). "Declarations and bylaws of a homeowners association are contracts between the association and the purchasers." *Lisy v. Mayfair Estates Homeowners Assn.*, 9th Dist. Summit No. 25392, 2012-Ohio-68, ¶ 29. "To prove a breach of contract claim, a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Discover Bank v. Poling*, 10th Dist. Franklin No. 04AP-1117, 2005-Ohio-1543, ¶ 17, quoting *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483 (2d Dist.2000).

{¶ 60} The Baruks' breach of contract claim is based on the interpretation of a contract, in this case, the Design Guide. In reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *O'Bannon Meadows Homeowners Assn., Inc. v. O'Bannon Properties, L.L.C.*, 12th Dist. Clermont No. CA2012-10-073, 2013-Ohio-2395, ¶ 19, citing *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). In ascertaining the intent of the parties, the court must presume that the intent resides in the language the parties chose to employ in the agreement. *Towne Dev. Group, Ltd. v. Hutsenpiller Contrs.*, 12th Dist. Butler No. CA2012-09-181, 2013-Ohio-4326, ¶ 17, citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361 (1997).

{¶ 61} "A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract." *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2010-07-061, 2010-Ohio-5186, ¶ 12. In turn, common, undefined words appearing in a contract will be given their plain and ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the agreement. *Deerfield Twp. v. Mason*, 12th Dist. Warren No. CA2011-12-138, 2013-Ohio-779, ¶ 16.

Setback Provisions of the Design Guide

**{¶ 62}** Initially, the Baruks claim the construction of the fire pit area violates the 15-foot setback provisions of the Design Guide. The trial court found no violation of the setback provisions contained in the Design Guide because the fire pit area constitutes a "patio" that is a permitted exception to the 15-foot setback requirements. As noted above, the Design Guide provides:

> Decks, porches, wing walls and other items attached to the house are considered to be part of the house property and will not be allowed to encroach into side or rear yard setbacks, except as variations in the case of unique site characteristics, which the [Committee] may consider on a case-by-case basis. **Patios, driveways, walks, etc., may usually encroach into setback areas.**

(Emphasis added.)

The Design Guide does not further define what constitutes a "patio." Therefore, we must turn to the plain and ordinary meaning of the word for guidance.

**{¶ 63}** Pursuant to Merriam-Webster's Online: Dictionary and Thesaurus, a "patio" is "a flat area of ground that is covered with a hard material (such as bricks or concrete), is usually behind a house, and is used for sitting and relaxing." *Merriam-Webster's Online: Dictionary and Thesaurus*, http://www.merriam-webster.com/dictionary/patio (accessed March 3, 2014). The term "patio" has also been defined as "a recreation area adjoining a dwelling, often paved, and adapted esp. to outdoor dining." *Webster's Third New International Dictionary* (1993).

**{¶ 64}** Here, the fire pit area at issue consists of a flat circular concrete slab that measures approximately 20 feet in diameter that is surrounded by a low semi-circular "seat wall" standing approximately 18 inches high. At the center of the concrete slab is a circular gas fire pit. The entire area is connected to an outdoor living space that includes a screened-in gazebo that includes a kitchen and bar area. According to the Nwankwos' deposition

testimony, the fire pit has been lit a maximum of four times, including once for the neighborhood Christmas party. However, even when the fire pit was not lit, the fire pit area has been used sporadically for social gatherings, such as their daughter's graduation party, as well as other business functions.

{¶ 65} After a thorough review of the record, we agree with the trial court's decision finding the fire pit area at issue here constitutes a "patio" under the Design Guide. As the trial court found, "[c]oncluding that this area is anything other than a patio would be an unreasonable stretch of the imagination." This is particularly true given the Baruks' own characterization of the fire pit area as a "raised patio/firepit" in an e-mail to the Association first addressing their concerns with the project. Therefore, because the fire pit area constitutes a "patio" as that term is used in the Design Guide as a matter of law, it is a permitted exception to the Design Guide's 15-foot setback requirements.

{¶ 66} Nevertheless, the Baruks allege that even if the fire pit area does constitute a "patio," which it clearly does, its construction is nevertheless in violation of the Design Guide because it is enclosed by "walls." Under the Design Guide, "[w]alls and fences should be considered as an extension of the architecture of the residence." As a result, because "walls" are considered as an extension of the architecture of the residence, the Baruks allege that "homeowners in the Heritage Club are prohibited from constructing walls within the 15 feet of their side property lines."

{¶ 67} However, even assuming the Baruks interpretation of the Design Guide were true, the semi-circular "seat wall" that stands approximately 18 inches high simply cannot be consider a "wall" as that term is used in the Design Guide. The "seat wall" is just that, a sitting area that encompasses the fire pit area. Simply because the description of this sitting area uses the term "wall," does not make it a violation of the Design Guide. The Baruks' overly strict interpretation is improper and in no way indicates the intent behind the

restrictions for "walls and fences" as contained in the Design Guide. Therefore, the trial court properly concluded that the construction of the fire pit area did not violate the 15-foot setback provisions in the Design Guide. Accordingly, the Baruks' claim alleging a violation of the Design Guide's setback provisions is without merit and overruled.

Drainage Restrictions of the Design Guide

{¶ 68} Next, the Baruks claim the construction of the fire pit area violates the drainage restrictions contained in the Design Guide. In regards to drainage, the Design Guide provides, in pertinent part, the following:

> Storm water, erosion and sedimentation must be controlled and handled properly during and after construction. Downstream adjacent property must receive and not impede the flow of storm water originating from upstream natural watersheds.

The Design Guide also specifically states that the determination of "environmental restrictions, drainage and grading requirements and all surface and subsurface soil conditions" is the homeowner's responsibility.

{¶ 69} As part of their deposition testimony, the Baruks claim that following the construction of the fire pit area, there is now standing water "constantly" on their property that damages their grass and makes it difficult for their landscapers to mow. As Mrs. Baruk testified:

> Oftentimes they're not able to mow it. Sometimes they have to wait until we get a very big dry spell just to get it a little bit down, but they basically said they cannot mow my yard the way I would like them to.[3]

The Baruks also submitted an affidavit from Larry Jeffers, a professional civil engineer licensed in the state of Ohio, who averred that the construction project has caused surface

---

3. We question whether the drainage requirements found in the Design Guide may be applied without limit after the construction is complete. This is especially true considering this restriction is found in a section of the Design Guide entitled "Preliminary Plans." However, that question is not currently before this court.

runoff that has adversely affected the Baruks' property.

{¶ 70} On the other hand, the Nwankwos testified that they were informed of drainage issues on the property in May of 2012, shortly before the construction project was completed. After being informed of the potential drainage issues, the Nwankwos hired a landscaper to install a French drain on the property. According to the Nwankwos, the installation of the French drain has solved any drainage issues that may have resulted from the construction project. Yet, even after the French drain was installed, the Nwankwos readily admit they have not conducted any investigation to determine whether the supposed drainage problems have been resolved.

{¶ 71} As can be seen, there is conflicting testimony regarding the alleged drainage issues on the Baruks' property. Based on this testimony, there remains an assortment of factual issues that must be resolved. These factual questions include, among others, whether there actually is a drainage issue on the Baruks' property, as well as the cause of any alleged drainage problem. Again, the Baruks claim that they have had drainage issues on their property since the completion of the fire pit area, whereas the Nwankwos claim that any drainage issues were remedied through their installation of a French drain. Therefore, as questions of material fact exist, we find the trial court erred in its decision finding the Nwankwos were entitled to judgment in their favor in regards to the Baruks' claims alleging a violation of the Design Guide's drainage restrictions. Accordingly, while the Baruks' third assignment of error is overruled in regards to their claim alleging the fire pit area violates the setback requirements of the Design Guide, this assignment of error is sustained in regards to the Baruks' claims alleging a violation of the Design Guide's drainage restrictions.

**Assignment of Error No. 4**

{¶ 72} THE TRIAL COURT ERRED BY GRANTING THE NWANKWOS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' BREACH OF

CONTRACT CLAIMS ARISING FROM VIOLATIONS OF THE NUISANCE PROVISIONS CONTAINED IN THE DECLARATIONS.

{¶ 73} In their fourth assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Nwankwos in regards to their breach of contract claim based on an alleged violation of the nuisance provisions contained in the Declarations. We agree.

{¶ 74} Article IX, Section 9.3, Subsection F of the Declarations entitled "Nuisances" prohibits the following:

> No portion of the Property shall be used, in whole or in part, for the storage of any property or thing that will cause it to appear to be in an unclean or untidy condition or that will be obnoxious to the eye; nor shall any substance, thing, or material be kept upon any portion of the Property that will emit foul or obnoxious odors or that will cause any noise or other condition that will or might disturb the peace, quiet, safety, comfort, or serenity of the occupants of surrounding property.

That section continues and provides:

> No noxious, illegal or offensive activity shall be carried on upon any portion of the Property, nor shall anything be done thereon tending to cause embarrassment, discomfort, annoyance, or nuisance to any person using any portion of the Property. There shall not be maintained any plants or animals or device or thing of any sort whose activities or existence in any way is noxious, dangerous, unsightly, unpleasant, or of a nature as may diminish or destroy the enjoyment of the Property.

Pursuant to Article IX, Section 9.2, any person owning property within the Subdivision may enforce the covenants and restrictions contained in the Declarations by bringing an action at law or in equity against the offending party.

{¶ 75} In ruling on the parties' competing motions for summary judgment, the trial court determined the Nwankwos were entitled to summary judgment on this claim. However, the Baruks also brought a claim alleging common law nuisance. In ruling on the Baruks' common law nuisance claim, the trial court determined that questions of material fact remain

as to whether the Nwankwos' use of the property constituted a nuisance.

{¶ 76} We have already determined that the Baruks' claim alleging common law nuisance remains pending as their attempts to voluntarily dismiss this claim without prejudice under Civ.R. 41(A) was a nullity. As the trial court determined questions of material fact remained regarding the common law nuisance claim, we find questions of fact likewise remain as to whether the Nwankwos breached the nuisance provisions found in the Declarations. To hold otherwise would be inherently inconsistent with the record now before this court. Therefore, because questions of material fact remain as to whether the Nwankwos have violated the nuisance provisions contained in the Declarations, the Baruks' fourth assignment of error is sustained.

**Assignment of Error No. 5**

{¶ 77} THE TRIAL COURT ERRED BY GRANTING THE HOA'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE BARUKS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' CLAIMS FOR BREACH OF FIDUCIARY DUTY ARISING FROM THE HOA'S FAILURE TO ENFORCE ITS SETBACK AND DRAINAGE RESTRICTIONS.

{¶ 78} In their fifth assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Association in regards to their breach of fiduciary duty claim arising from the Association's alleged failure to enforce its setback and drainage restrictions found in the Design Guide.

{¶ 79} "A fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." (Internal quotations omitted.) *Williams Creek Homeowners Assn. v. Zweifel*, 10th Dist. Franklin No. 07AP-689, 2008-Ohio-2434, ¶ 69, quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio

St.3d 274, 282 (1993). To recover under a breach of fiduciary duty claim, "a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately caused by that failure." *Morgan v. Ramby*, 12th Dist. Warren Nos. CA2010-10-095 and CA2010-10-101, 2012-Ohio-763, ¶ 25.

{¶ 80} As part of its answer submitted in this matter, the Association admits it has a fiduciary relationship with its homeowners and that it has a fiduciary duty to enforce the provisions of the Design Guide. This was later confirmed by the deposition testimony of Partridge, the Association president, who specifically acknowledged that it was the Association's responsibility to enforce the Design Guide provisions. However, before there can be any recovery for an alleged breach of a fiduciary duty, it must first be conclusively established that the construction of the fire pit area on the Nwankwos' property actually does constitute a violation of the Design Guide.

{¶ 81} As noted above, the trial court properly concluded that the construction of the fire pit area did not violate the setback provisions in the Design Guide. However, questions of material fact remain as to whether the construction project has, in fact, resulted in a violation of the Design Guide's drainage restrictions. In turn, as there remain questions of material fact in regards to the Design Guide's drainage restrictions, whether the Association can ultimately be found to have breached its fiduciary duty in failing to enforce the drainage restrictions also presents questions of material fact, thereby precluding summary judgment in this matter. Therefore, because questions of material fact remain, the Baruks' fifth assignment of error is overruled as it relates to the setback requirements in the Design Guide, but sustained in regards to the Design Guide's drainage restrictions.

### Assignment of Error No. 6

{¶ 82} THE TRIAL COURT ERRED BY GRANTING THE HOA'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE BARUKS' MOTION FOR SUMMARY

JUDGMENT WITH RESPECT TO THE BARUKS' BREACH OF CONTRACT CLAIMS AGAINST THE HOA.

{¶ 83} In their sixth assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Association in regards to their breach of contract claim arising from its alleged failure to enforce its setback and drainage restrictions found in the Design Guide. As the Baruks readily admit, this cause of action is essentially the same as that advanced under their breach of fiduciary duty claim discussed under their fifth assignment of error. Therefore, in light of our decision regarding the Baruks' fifth assignment of error, the Baruks' sixth assignment of error is likewise overruled as it relates to the setback requirements in the Design Guide, but sustained in regards to the Design Guide's drainage restrictions.

**Assignment of Error No. 7**

{¶ 84} THE TRIAL COURT ERRED BY GRANTING THE HOA'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE BARUKS' BREACH OF FIDUCIARY DUTY AND BREACH OF CONTRACT CLAIMS BASED ON ALLEGATIONS THAT THE NWANKWOS' VIOLATED THE NUISANCE PROVISIONS OF THE DECLARATIONS.

{¶ 85} In their seventh assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Association in regards to their breach of fiduciary duty and breach of contract claim in regards to the nuisance provisions contained in the Declarations. Again, as discussed under the Baruks' fourth assignment of error, we find questions of material fact remain as to whether the Nwankwos breached the Declarations' nuisance provisions. Therefore, because questions of material fact remain, the Baruks' seventh assignment of error alleging breach of fiduciary duty and breach of contract for failing to enforce the Declarations' nuisance provisions is sustained.

**Assignment of Error No. 8**

{¶ 86} THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE HOA ON THE BARUKS' CLAIMS SEEKING PUNITIVE DAMAGES.

{¶ 87} In their eighth assignment of error, the Baruks claim the trial court erred by granting summary judgment to the Association in regards to their request for punitive damages. "Punitive damages may be awarded for breach of fiduciary duty, as for other intentional torts, upon proof of actual or implied malice." *Burns v. Prudential Securities, Inc.*, 167 Ohio App.3d 809, 2006-Ohio-3550, ¶ 100 (3d Dist.). As questions of fact remain regarding the Baruks' breach of fiduciary duty claims, we find it was premature for the trial court to summarily dismiss their request for punitive damages in this matter. Therefore, while we believe the Baruks' will face a steep uphill battle in establishing actual or implied malice here, questions of material fact nevertheless remain, thereby precluding summary judgment on this claim. Accordingly, the Baruks' eighth assignment of error is sustained.

**Conclusion**

{¶ 88} In light of the foregoing, we find the Baruks' common law claims alleging nuisance and trespass remain pending despite their efforts to voluntarily dismiss such claims without prejudice under Civ.R. 41(A). In addition, we affirm the trial court's decision granting summary judgment to the Nwankwos on the Baruks' claims alleging a violation of the Zoning Code and negligence per se. We also affirm the trial court's decision granting summary judgment to the Nwankwos on the Baruks' claim alleging a violation of the setback provisions of the Design Guide. However, because questions of material fact remain, we reverse the trial court's decision granting summary judgment to the Nwankwos on the Baruks' claims alleging violations of the Design Guide's drainage restrictions and the Declarations' nuisance provisions.

{¶ 89} As a result of these findings, we likewise reverse the trial court's decision granting summary judgment to the Association on the Baruks' claims alleging breach of

fiduciary duty and breach of contract for their alleged failure to enforce the Design Guide's drainage restrictions and the Declarations' nuisance provisions. Finally, because the Baruks' claim alleging a breach of fiduciary duty remains viable, we reverse the trial court's decision as it relates to their claim for punitive damages.

{¶ 90} Judgment affirmed in part, reversed in part and remanded for further proceedings.

RINGLAND, P.J., concurs.

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 91} I concur with the majority in its resolution of the Baruks' third through eighth assignments of error. However, I disagree with the majority's view that the trial court properly granted summary judgment to the Nwankwos and properly dismissed the Baruks' claim that the Nwankwos' construction of the fire pit area violated the Zoning Code.

{¶ 92} The majority affirms the trial court's grant of summary judgment regarding the Baruks' Zoning Code violation claims against the Nwankwos on the grounds the Baruks failed to: (1) satisfy their burden of proof upon summary judgment; (2) contest the City's claim that it does not regulate construction, such as the fire pit construction here, pursuant to the Zoning Code; (3) join the City as a party to their lawsuit; and (4) compel the City to enforce the Zoning Code against the Nwankwos.

{¶ 93} The majority primarily bases its opinion upon the Baruks' failure to satisfy their burden of proof in opposing summary judgment regarding their Zoning Code claims. Presumably, the majority is asserting that the zoning administrator's affidavit and certain email communications from the City to the Baruks that the fire pit construction is not

regulated by the Zoning Code, were not rebutted or sufficiently otherwise challenged by the Baruks with a contrary affidavit or other Civ.R. 56(C) evidence, so as to raise genuine issues of material fact.

{¶ 94} The zoning administrator's affidavit and the email communications from the City to the Baruks variously asserted that, "patio and associated fire pit * * * [are] not being regulated by the City's zoning code," "fire pits that are typically associated with at-grade paver and or poured concrete patios, have not been regulated for zoning or building code purposes (i.e. setbacks relative to property lines) for residential applications," and "pavers/slabs/walks/patios on grade were allowed in the zoning setbacks." The foregoing may be construed as a legal interpretation by the zoning administrator as to the import of the Zoning Code, a factual averment as to how the Zoning Code has been administered, or both.

{¶ 95} In considering whether the Baruks have satisfied their Civ.R. 56 burden of proof, the evidence before the trial court must be examined to determine whether, as a matter of law, the zoning administrator's interpretation of the Zoning Code is reasonable and entitled to the trial court's deference.

{¶ 96} Reference should first be made to the Zoning Code definitions of "structure" and "accessory structure," as such are subject to the 15 foot side-yard setback requirements for the R-2 zone in which the Baruks' and Nwankwos' property is located.

{¶ 97} To reiterate, the Zoning Code defines a "structure" as

> Anything constructed or erected, the intended use of which requires *permanent or stationary location on the ground* or which is attached to something having a permanent or stationary location on the ground, *including paved areas* and signs.

(Emphasis added.)

{¶ 98} The Zoning Code defines "accessory use or structure" as

> A use or structure constructed or *installed on, above, or below the surface of a parcel*, which is located on the same lot as a

- 35 -

principal use or structure and which is subordinate to or serves the principal use or structure, is subordinate in area to the principal use or structure, and is customarily incidental to the principal use or structure. "Accessory use" includes anything of a subordinate nature detached from a principal structure or use, such as fences, walls, sheds, garages, parking places, decks, poles, poster panels and billboards. "Accessory use" does not mean or include structures providing utility service to the parcel, such as gas, electric or water.

(Emphasis added.)

{¶ 99} Reference should also be made to the undisputed evidence as to the nature of the fire pit construction. According to the trial court, the fire pit area construction

consists of a circular flat concrete slab with a diameter of approximately 20 feet. A circular gas fire pit is set within the concrete in the center. Surrounding the concrete slab is a low semi-circle wall used for seating, which is between 1-2 feet tall. The area is connected to the home and the rest of the outdoor living space by a continuous pour of concrete.

{¶ 100} The trial court further found that, "It is not disputed that this fire pit area is entirely within 15 feet of the property line separating the Nwankwos' and Baruks' lots."

{¶ 101} As set forth in the definitions, "structure" and "accessory structure" include "paved areas," with "permanent or stationary location on the ground," and "constructed or installed on, above or below the surface of a parcel."[4] Simply put, there is no reasonable interpretation of the Zoning Code pursuant to which the fire pit construction area would not constitute a "structure" or "accessory structure" as defined therein, so as to be subject to the applicable 15-foot-side-yard setback requirement. The City provided no explanation, much less a reasonable explanation, as to why this fire pit construction, a 20-foot-diameter area

---

4. The majority discusses whether the affidavit of Gregory Nicholls, the City's chief building official (Nicholls is referred to in this dissent as the zoning administrator), which was attached to the Nwankwos' motion for summary judgment, is competent Civ.R. 56(C) evidence because it contains an opinion on a legal matter, i.e., whether the fire pit construction violates the Zoning Code. I do not disagree with the majority's analysis that this affidavit can be properly considered by the trial court on summary judgment. However, this does not mean that the trial court must accept Nicholls' conclusion on what is essentially a legal matter, and rejecting Nicholls' conclusion on such a matter does not involve an improper weighing of evidence or consideration of credibility.

paved in concrete with a permanent and stationary location on the ground and surrounded by a semi-circular "1-2 feet" high seating wall, would not be considered a "structure" or "accessory structure" or otherwise be exempt from regulation under the Zoning Code. In fact, neither the zoning administrator (in his affidavit, the emails, or otherwise) nor the majority claim that the fire pit construction is not a "structure" or an "accessory structure" as defined by the Zoning Code. Furthermore, the zoning administrator does not rely upon any provision of the Zoning Code to support his assertion that the fire pit construction is exempt from the side-yard setback regulations, and neither the Nwankwos nor the majority point to one. Rather, the City's claim that the fire pit construction is exempt from regulation is a bare assertion, perhaps practiced, but not supported by the language of the Zoning Code.

{¶ 102} A zoning administrator's interpretation of a zoning code is entitled to deference and should be upheld where the interpretation is reasonable. *See Franklinton Coalition v. Open Shelter, Inc.*, 13 Ohio App.3d 399 (10th Dist.1983). In support of this maxim, the majority cites *McDowell,* 2009-Ohio-6768, for the proposition that a zoning authority may "exercise its discretion in making a reasonable interpretation of its own Zoning Code." *McDowell* at ¶ 22. Notably, however, the *McDowell* court qualified its holding by observing that there was "no showing that the city's construction of the ordinance * * * was arbitrary or unreasonable." *Id.* Here, the zoning administrator's interpretation that the fire pit construction was not subject to regulation by the Zoning Code is patently arbitrary and unreasonable.

{¶ 103} The majority observes that "the Baruks have provided no evidence to refute the fact that construction projects like the one at issue here *are not regulated by the City for zoning or building code purposes.*" (Emphasis added.) This finding suffers from two deficiencies.

{¶ 104} First, it somewhat miscasts what was before the trial court on summary

judgment. The issue is not whether there is a genuine issue of material fact as to whether the City is enforcing its Zoning Code but whether there is a genuine issue of material fact as to whether the Zoning Code was violated. As discussed more fully below, the zoning administrator is without authority to decline enforcement of the Zoning Code.

{¶ 105} Second, it fails to take into account the fact that the Zoning Code was before the trial court as evidence, as well as the undisputed evidence as to the nature of the fire pit construction and its location entirely within 15 feet of the Baruks' side-yard property line. "The wording of Civ.R. 56(C) makes it clear that a trial court must conscientiously examine all the evidence before it when ruling on a summary judgment motion." *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356, 359 (1992). Applying the law (i.e., the Zoning Code) to an undisputed set of facts (i.e., the fire pit construction within 15 feet of the Baruks' property line) is a purely legal exercise involving no resolution of disputed factual issues. Thus, rejection of the legal interpretations expressed in the zoning administrator's affidavit and the emails as being legally inconsistent with the terms of the Zoning Code, does not involve an improper weighing of evidence in considering a motion for summary judgment. Certainly, where Civ.R. 56(C) evidence contains assertions of legal matters, a trial court remains free to apply the law as it determines it to be, even when it is contrary to what may be asserted as the law in the evidentiary materials.

{¶ 106} The zoning administrator's affidavit and the emails might also be construed as factual averments as to how the City has administered its Zoning Code. These documents assert that the City has not regulated construction, such as the fire pit here, under the Zoning Code. Whether the City has, as a matter of fact and practice, not regulated such construction, does not mean that the Zoning Code does not provide for such regulation, nor does it relieve the trial court of its duty to determine whether the Zoning Code provides for such regulation. Lack of municipal enforcement does not equate to lack of a violation.

Otherwise, the private right of action granted by the General Assembly in R.C. 713.13 to specially damaged neighboring property owners to enjoin zoning violations would be a nullity. Here, the City has only asserted that it does not regulate this type of construction, and has so asserted without relying upon any provision of the Zoning Code which exempts it from regulation. Further, the City does not claim this type of construction does not constitute a "structure" or "accessary structure" as defined by the Zoning Code. Significantly, the Zoning Code denies to the zoning administrator and others charged with administration of the Zoning Code the power and discretion to decline to regulate that which the Zoning Code subjects to regulation. Section 1135.1 of the Zoning Code provides that:

> *All * * * officials and public employees of the city, vested with the duty and authority to issue permits or licenses, shall conform to the provisions of this Zoning Ordinance* and shall not issue any permit or license for any use, building or purpose in conflict with the provisions of this Zoning Ordinance. Any permit or license issued in conflict with the provisions of this Zoning Ordinance, shall be null and void and shall be of no effect whatsoever.

(Emphasis added.)

{¶ 107} The majority rightly points out that there may be practical reasons why construction such as that involved here is not regulated. However, accommodation of these concerns is best addressed by a text amendment to the Zoning Code rather than a failure of enforcement.

{¶ 108} Based upon the Zoning Code definitions of "structure" and "accessory structure" and the undisputed evidence of the nature and location of the fire pit construction, and notwithstanding the zoning administrator's affidavit and the emails, I believe the trial court erred in finding no genuine issues of material fact as to whether the fire pit construction is subject to the side-yard setback regulations applicable to the R-2 zone.

{¶ 109} The majority also suggests that the Baruks are somehow "stuck" with the zoning administrator's interpretation because they did not contest it and/or join the City as a

party to this action.

{¶ 110} The majority cites *Moore*, 2012-Ohio-3897, in support of its allusion that the Baruks are bound by the zoning administrator's determination because they did not contest it by way of a declaratory judgment action or administrative appeal. First, R.C. 713.13 and Section 1135.7 of the Zoning Code grant a private right of action to a neighboring property owner, who is specially damaged by a zoning violation, to enjoin and abate the violation.[5] Notably, neither the statute nor the Zoning Code condition the exercise of this private right of action upon exhaustion of any other available remedy. *See Matter v. Rittinger*, 4th Dist. Ross No. 1385, 1988 WL 92408 (Aug. 26, 1988) (R.C. 713.13 is a special statute that may be availed of by any person coming within its terms regardless of other remedies available to him, including an administrative appeal). Additionally, if a municipality was intended to be a necessary party in a private action under R.C. 713.13, the General Assembly could have so provided but chose not to.

{¶ 111} Second, assuming the zoning administrator's communication to the Baruks that the fire pit construction was not regulated by the Zoning Code, gave the Baruks a right to appeal that determination to the City's Board of Zoning Appeals, the Nwankwos did not plead failure to exhaust administrative remedies as a defense. Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Chagrin Falls*, 77 Ohio St.3d 456 (1997); *Palmer v. Gray*, 12th Dist. Warren No. CA2011-04-034, 2011-Ohio-6796. The Nwankwos' failure to plead exhaustion as a defense constitutes a waiver and leaves the Baruks free to maintain this private action to enforce the Zoning Code. *See Marinich v. Lumpkin*, 12th Dist. Warren No. CA2011-11-124, 2012-Ohio-4526.

{¶ 112} The majority also cites *Throckmorton*, 2000 WL 770554, for the proposition

---

5. The trial court's decision on summary judgment did not discuss whether the Baruks are a "specially damaged" neighboring property owner. I therefore assume this issue was not argued on summary judgment.

that the Baruks should have sought the issuance of a writ of a mandamus to compel the City to enforce its Zoning Code. Even so, in view of the private right of action provided by R.C. 713.13 and Section 1135.7 of the Zoning Code, it was unnecessary for them to do so and certainly not a prerequisite or prohibition to the maintenance of this private action.

{¶ 113} With respect and regard for my colleagues in the majority, I therefore dissent from their resolution of the first and second assignments of error, would reverse the trial court's grant of summary judgment to the Nwankwos with regard to the Baruks' claims that the fire pit construction violated the Zoning Code, and would remand for further proceedings relating to these causes of action.